Bruce **WOHLFEIL** and Gail Wohlfeil, Plaintiffs-Appellants,

v.

**MURRAY MACHINERY, INC.,** Defendant, Third-Party Plaintiff-Respondent.

No. C1–83–1169.

Court of Appeals of Minnesota.

Feb. 15, 1984.

Robert J. King, Jr., Hvass, Weisman & King, Chtd., Minneapolis, for plaintiffs-appellants.

Kenneth W. Dodge, Meagher, Geer, Markham, Anderson, Adamson, Flashkamp & Brennan, Minneapolis, for defendant, third-party plaintiff-respondent.

Heard, considered and decided by POPOVICH, C.J., SEDGWICK and FOLEY, JJ.

## OPINION

POPOVICH, Chief Judge.

This is a product liability case. Plaintiff Wohlfeil appeals from orders of the Hennepin County District Court granting a motion for a directed verdict and denying a new trial. Wohlfeil had alleged that the Mighty Murc log splitter he rented, manufactured by defendant Murray, was defective. Murray denied the allegations and impleaded McGarvie's Outdoor Shop, which rented the log splitter to Wohlfeil. At the close of plaintiff's case, Murray moved for a directed verdict.

The trial court granted the motion, concluding that the evidence presented by plaintiff was, as a matter of law, insufficient to justify a finding: (1) that plaintiff was struck by a piece of wood from the log he was splitting at about the time of his injury; or (2) that the piece of wood was propelled as a result of a negligent design of the cutting wedge; or (3) that the cutting wedge on the machine being operated by plaintiff was negligently designed, or (4) that the cutting wedge of the log splitter was defective, unreasonably dangerous to the ordinary user, and was defective when it left defendant Murray. Plaintiff's motion for a new trial was denied. We disagree and reverse.

## FACTS

Appellant, age 33, is a self-employed mason contractor. For thirteen years he made his living as a bricklayer, using various types of machinery, including wet and dry saws, hydraulic jacks, jack hammers, power buggies and forklifts. He has never suffered a significant injury while using this machinery.

On Saturday morning, November 24, 1979, appellant rented a Mighty Murc log splitter from third-party defendant McGarvie's Outdoor Shop. The Mighty Murc is a hydraulically powered wood splitter designed, manufactured and sold by respondent Murray Machinery, Inc. The machine appellant rented was one of approximately six Mighty Murc log splitters owned by McGarvie's and available for public rental. The six machines had no individual identification markings.

The Mighty Murc's basic design features four structural characteristics. The first is the I-beam, the steel structure upon which the wood to be split is placed. Second is the triangular shaped wedge which is responsible for splitting the wood. Third is the hydraulically powered ram which forces the wood along the I-beam and into the wedge. Fourth is the control lever which controls the speed of the hydraulic ram.

Before renting the Mighty Murc, appellant looked at a number of different log splitters. He chose the Mighty Murc because it was the log splitter best suited to his purpose. Appellant preferred the wedge on the Mighty Murc because the way the wedge was attached to the I-beam was stronger and sturdier than other makes he had inspected.

Although appellant had never operated a wood splitter before November 24, 1979, he had seen them operated. In early November, he received a 15–20 minute demonstration of the Mighty Murc splitting an elm log at McGarvie's. Appellant had also observed a friend operating a homemade hydraulic wood splitter prior to renting the Mighty Murc.

Appellant picked up the Mighty Murc at approximately 9:15 A.M. on the 24th. He inspected the Mighty Murc before signing the rental agreement, but was not given any additional instruction or a copy of the owner's manual. Appellant attached the splitter to his pickup truck and transported it to the Rosehill Resort in Lindstrom, Minnesota.

Appellant had prepared and stacked the wood earlier so he began the splitting as soon as he arrived. He wore rubber overshoes, but a one inch of snow covering melted as he worked. The weather was clear, the temperature was in the mid-thirties and the terrain was level. Appellant worked alone for about four hours. During that time he turned the machine off

once to speak with the resort owner who was passing by.

When operating the splitter, appellant faced the machine with the back end of the machine to his left. He operated the control lever with his left hand and held the wood on the I-beam with his right hand until it reached the wedge. The pile of uncut wood was in front of appellant to his right.

Appellant did not recall seeing any unusual conditions on the cutting wedge or any wood bowing during splitting. Some pieces of wood were difficult to split, however, and others could not be split. On occasion, appellant had to forcibly remove a partially split log from the wedge; some pieces could only be removed by pounding them off with an eight pound mall.

Appellant's last recollection of time was 1:20 P.M. The piece of elm he was splitting at the time was tough on the machine. The next thing appellant remembered was waking up lying on his back, his feet at the tires of the Mighty Murc, and his head and body to the rear of the machine. The front of his body was covered with blood. There was also blood in the snow next to his head. His lip was split and he could feel two teeth on the left side of his face on the roof of his mouth.

After regaining consciousness, appellant checked the machine. The splitter was off, although it still had gas. The log was still on the splitter, one end in contact with the ram, the other attached to the wedge.

Appellant drove himself to the emergency room of Chisago Lakes Facility. There, wood was removed from his mouth and the wound was cleaned. Thereafter, appellant was transferred to St. Joseph's Hospital in St. Paul. Dr. Joseph Skow, a plastic surgeon, examined him in the emergency room. Dr. Skow's examination revealed: a through-and-through laceration of appellant's left upper lip, a laceration of his buccal sulcus, the area where the upper portion of the upper lip joins the inside of the mouth, a degloving injury to his left cheek area, i.e. the skin of the face in the cheek area had pulled away from the underlying bony structure, and the displacement of two upper teeth backwards and upwards towards the roof of the mouth.

Appellant did not eat lunch the day of the accident, but he had a full breakfast. Appellant had not consumed any alcohol or drugs nor was he on any medication. Appellant had no prior history of fainting or loss of balance.

## ISSUES

1. Whether the plaintiff introduced sufficient evidence of causation to create a factual question for the jury?

2. Whether the trial court abused its discretion in refusing to permit plaintiff's expert to testify on causation?

## ANALYSIS

1. *Causation:*

The central issue on this appeal is whether the trial court erred in directing a verdict in favor of Murray Machinery, Inc.

A motion for a directed verdict presents a question of law regarding the sufficiency of the evidence to raise a fact question for the jury's decision. For purposes of the motion, the trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may reasonably be drawn from that evidence. *Midland National Bank of Minneapolis, Etc. v. Perranoski*, 299 N.W.2d 404, 409 (Minn.1980).

The standard to be used in determining whether a verdict should be directed by the trial court, while often worded in different ways, is essentially whether different persons could reasonably come to different conclusions after viewing the evidence as a whole in the light most favorable to the nonmoving party.

"We have held that the test to be applied in determining whether a verdict should be directed by the trial court is whether it is plain from the evidence submitted that all men can draw but one conclusion." *Carlson v. Rand*, 275

Minn. 272, 276, 146 N.W.2d 190, 193 (1966).

*Lakeland Constructors, Inc. v. Roger Sheehy Company*, 304 Minn. 175, 178, 229 N.W.2d 514, 515–16 (1975).

■ Thus, a directed verdict is appropriate only in the exceptional case. The trial court should exercise its authority to direct a verdict cautiously and sparingly. "Caution is especially required where the motion is made upon the ground of failure of proof at the close of plaintiff's case in chief rather than at the close of all the evidence." *Usher v. Allstate Insurance Company*, 300 Minn. 52, 57, 218 N.W.2d 201, 205 (1974). In *Schmenski v. Church of St. Casimir of Wells*, 243 Minn. 289, 291–92, 67 N.W.2d 644, 646 (1954), the Supreme Court said:

> * * * It is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court. * * *

Viewing the evidence and all reasonable inferences supporting plaintiff's claim, reasonable people could disagree over whether the injuries plaintiff sustained on November 24, 1979 were caused by the wood he was splitting in the Mighty Murc log splitter.

Plaintiff's case-in-chief included his own testimony, the testimony of his doctors, and an engineer. The engineer testified that the design of the Mighty Murc's cutting wedge was defective because, under pressure, the weld would crack and lead to formation of a vertical obstruction. He further testified that wood being split could catch on the vertical obstruction and be propelled back towards the operator. During operation of the machine, plaintiff testified that he stood in the prescribed operator's position.

Plaintiff's medical experts testified that the blow to his face was forceful and struck him indirectly in an upward motion. Plaintiff's last recollection before being knocked unconscious was splitting a piece of elm that was tough on the machine.

When he regained consciousness, he found himself on his back and his whole body was behind the machine.

Additionally, the underlying circumstances reduce the probability that plaintiff's injuries could be explained by the other causes suggested. One of plaintiff's doctors did testify that the injuries were not inconsistent with an unbroken fall. The terrain plaintiff worked on was level, however, and the ground was not slippery. Furthermore, plaintiff had no history of fainting or loss of balance and there was no evidence that he was under the influence of alcohol, drugs or medication.

It is also conceivable that an unknown intruder struck plaintiff in the mouth with a piece of wood. Plaintiff worked in the area for four hours, however, and observed only one person, the owner of the resort. One of plaintiff's doctors testified that the blow plaintiff sustained was tangential rather than direct and that it struck him in an upward motion.

■ The evidence does not equally sustain these alternative theories of causation. The evidence is consistent with plaintiff's theory of the case and is sufficiently probable to create a question for the jury.

### 2. *Engineering Expert:*

Plaintiff called Robert F. Rasmussen to establish a defect in the design of the Mighty Murc's splitting wedge. Rasmussen is eminently qualified as an engineer and was permitted to testify about the alleged design defect. Rasmussen was also permitted to testify that the defect could cause wood being split to be propelled back towards the operator. When Rasmussen was asked for his opinion as to what happened to cause Wohlfeil to be struck in the face by a piece of wood, an objection was sustained. A fair summary of the trial court's various rulings indicated the court would not permit Rasmussen to express an opinion as to the cause of the plaintiff's accident.

A lengthy sidebar included the following discussion:

THE COURT: All right. You state what you want.

MR. KING: It's not strong enough in terms of the weld. The weld is not strong enough, the weld will fracture under given circumstances causing the plate to deform and a vertical surface to present itself. If I'm allowed, Mr. Rasmussen will testify that given all of those facts and assuming a segment of the log being split becoming lodged on the vertical—

THE COURT: He can testify that what he figures happened to that log, but he can't testify that the piece flew off and struck this individual. That's for the jury.

MR. KING: He's subject to cross-examination.

THE COURT: I don't care if he's subject to cross-examination. That's a question that is invading the jury. The jury has the right to make that determination.

MR. KING: Your Honor, if I might point out, Rule 704 specifically allows the expert to testify on the ultimate issue which here is causation.

THE COURT: That's a Rule that there is in there, but that may be done in cases where it is proper and I don't think it's proper here because he hasn't any more expertise in that. He may have the expertise to the point where the piece comes off the log but he hasn't any more expertise to state that it went where it did and hit the guy in the head.

MR. VUKELICH: Precisely.

MR. KING: He does.

THE COURT: No, he doesn't, and I'm not going to do it.

■ Upon proper foundation, an expert engineer can testify as to the probability that wood struck the plaintiff in the face as a result of a defect in the log splitter. *Hiber v. City of St. Paul*, 219 Minn. 87, 16 N.W.2d 878 (1944), held:

It is not necessary that the truth of an expert's opinion be capable of demonstration; it is sufficient that it is probably true. "He [an expert witness] is not required to speak with such confidence as to exclude all doubts in his mind, but may render his testimony in the form of an estimate of opinion, couched in expressions that fall short of absolute conviction of accuracy. Such qualification affects merely the probative force of the testimony." 20 Am.Jur., Evidence, § 768. *See, Kundiger v. Metropolitan L. Ins. Co.*, 218 Minn. 273, 15 N.W.2d 487.

*Id.* at 93, 16 N.W.2d at 881.

(a) *Inadmissibility due to invading the province of the jury.*

Article 7 of the Minnesota Rules of Evidence governs opinions and expert testimony. Rule 704 deals specifically with opinions on the ultimate issue and provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Minn.R.Evid. 704. Rephrasing Rule 704, the Committee Comments state:

Expert and lay witnesses will not be precluded from giving an opinion merely because the opinion embraces an ultimate fact issue to be determined by the jury.

The trial court's ruling that Rasmussen's opinion would invade the province of the jury is contrary to Rule 704 and constitutes error. Were this the only ground for excluding the opinion, the ruling would be reversed.

(b) *Inadmissibility due to insufficient foundation.*

At the sidebar, the trial court stated that Rule 704 did not apply because Rasmussen did not have any expertise for his opinion regarding the cause of the accident. In terms of Rule 704, the opinion was not otherwise admissible because there was insufficient foundation to support admission of Rasmussen's opinion.

■ It is well established that an "expert must base his opinion on facts sufficient to form an adequate foundation for an opinion and should not be allowed to

speculate." *Hudson v. Snyder Body Inc.,* 326 N.W.2d 149, 154–55 (Minn.1982) (quoting *Albert Lea Ice & Fuel Co. v. United States Fire Insurance Co.,* 239 Minn. 198, 202, 58 N.W.2d 614, 617 (1953)). It is not necessary, however, that an expert observe how a person was injured or operate the machine that allegedly caused the accident. The record indicated that Mr. Rasmussen did not see how plaintiff was injured and he had never operated or observed a wood splitter in operation. On this record, the trial court determined that Rasmussen's opinion of what happened was sheer speculation. Recognizing the broad discretion trial courts have on matters relating to expert testimony, *Walton v. Jones,* 286 N.W.2d 710, 713 (Minn.1979); *Reinhardt v. Colton,* 337 N.W.2d 88, 92 n. 1 (Minn.1983), we cannot say the trial court abused its discretion in excluding the opinion. We do not hold, however, that admitting Rasmussen's opinion in evidence would have been improper. Upon retrial, the trial court should determine whether sufficient foundation is established for the opinion.

## DECISION

While defendant's motions at the conclusion of plaintiff's case for a directed verdict were granted, we believe the trial court erred. Plaintiff, in our opinion, had made a prima facie showing so that the burden of proceeding should have shifted to the defendants.

The trial court's orders of April 11, 1983 and July 25, 1983 are reversed, and the case is remanded for a new trial on all issues.