David J. TESMER, et al., Appellants,

v.

RICH LADDER COMPANY, et al., Respondents.

No. C4–85–1137.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Review Dismissed March 21, 1986.

Jerold M. Lucas, Paul H. Tanis, Jr., St. Peter, for appellants.

Sandra J. Skluzacek, Minneapolis, for respondents.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The jury returned verdicts of $759,350 for appellant David Tesmer and $115,000 for appellant Suzanne Tesmer in this negligence and products liability case. The trial court granted judgment notwithstanding the verdict (JNOV), and the Tesmers appeal.

## FACTS

Suzanne Tesmer purchased a ladder made by respondent R.D. Werner Co. as a gift for her husband, David Tesmer. The ladder is a 36-foot aluminum extension ladder that weighs approximately 85 pounds. David Tesmer used the ladder to paint the exterior of appellants' home. He used the ladder for three to four weeks without incident. On June 5, 1977 he was working at a height of approximately 24 feet. He fell to the ground, sustaining severe injuries. He is totally and permanently disabled.

Appellants introduced evidence that the ladder had slipped backwards and out from underneath David Tesmer when he fell. After the fall the ladder came to rest perpendicular to the wall of the house. White paint was splattered on the base of the house where David Tesmer fell. He testified that the ladder slid out backwards from underneath him.

Appellants' evidence indicates that the angle formed by the ladder and the ground was too acute. In other words, the base of the ladder was set too far out from the house. Appellants' expert testified that an angle of 75½ degrees is critical for proper and safe use of the ladder. If the ladder is set up at too acute an angle, there is a risk that the bottom of the ladder will slip backwards. If the ladder and the ground form too wide an angle there is a risk of the top tipping away from the building. Appellants' expert further testified that the ladder industry knows of these risks and knows ordinary users tend to set up extension ladders at too acute an angle. He testified that the ladder had been set up at 68–69 degrees at the time of the accident. One neighbor testified that the ladder was at a "bad angle." Another neighbor testified that it was at a "dangerous" angle of approximately 60 degrees.

The ladder had an instruction label that included the following instructions for setting up the ladder:

> Set up single or extension ladders at 75½ degrees by placing the bottom ¼ of the length being used out from the vertical resting point.

David Tesmer testified that he read some, but not all, of the instructions, and understood that the directions addressed safe use of the ladder. He testified he did not understand what the "75½ degrees" meant. Appellants' expert testified that the instruction label is inadequate because it does not identify the risk of the ladder slipping, it does not identify the "vertical resting point," it does not identify the "length being used," and because it does not motivate the user to follow the instructions given. He submitted his own version of adequate instructions.

David Tesmer's testimony about the ladder's angle conflicted somewhat with the reports of his neighbors. He testified that he thought he was using the ladder in a safe manner, and that the ladder was set up at an angle of 70–72 degrees at the time of the accident.

Appellants also claim that the ladder was defectively designed because it did not have spiking feet. Their expert testified that a spiking foot could have been added to the ladder, and that if the ladder had been spiked into the sod, the base would not have slid away from the wall. Werner manufactures a different 36-foot aluminum extension ladder that does have spiking feet. Spiking feet have been known to the ladder industry since the turn of the century, and various ladder manufacturers have used them on their ladders for at least 15 years.

The jury delivered its special verdict that (1) the ladder was defective by reason of a defective design, (2) the defective design directly caused the accident, (3) the ladder was labeled with inadequate warnings and instructions for safe use, (4) the inadequate labeling directly caused the accident, and (5) David Tesmer did not fail to exercise reasonable care.

Werner moved for JNOV or a new trial, or in the alternative a remittitur. The trial court granted judgment for the defendant based on a conclusion about evidence on the cause of the plaintiff's injury.

In granting JNOV, the trial court noted that the bickering and lack of cooperation between counsel made the trial painful to the court and counsel, but the court concluded that both parties had a fair trial.

## ISSUE

Was it error to grant judgment notwithstanding the verdict?

## ANALYSIS

1. Negligence. The trial court correctly accepted the jury's finding of negligence. The Tesmers introduced evidence from which the jury could conclude that the manufacturer's instructions were inadequate. The Tesmers' expert deemed the instructions inadequate because they did not identify the risk of the ladder slipping, they did not identify the "vertical resting point," they did not identify "the length being used," and they did not motivate the user

to follow the instructions. Appellants introduced evidence that David Tesmer did not understand the instructions. David Tesmer testified that he read the instructions, but did not understand what the "75½ degrees" meant.

■ The critical question is whether there was a reasonable basis for the jury's finding that this negligence directly caused the accident. *See Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 14–15 (Minn. 1979) (in reviewing a JNOV appellate and trial courts must accept the view of the evidence most favorable to the verdict and admit every inference reasonably drawn from the evidence).

The trial court held that the defects in the ladder and its instructions did not directly cause the accident. The court stated that "[p]laintiffs also introduced evidence, and claim, that David Tesmer actually set the ladder up at the proper angle as set forth on the label. * * * If he complied with the instructions concerning the safe operation of the ladder, it is obvious that the defective labeling was not the direct cause of the accident." In the course of proving absence of any fault on his part, David Tesmer did testify that he set up the ladder with care, was conscientious about following the instructions for using the ladder, and thought he was using the ladder in a safe manner. However, this does not compel the conclusion that he did in fact set up the ladder at the proper angle of 75½ degrees.

■ The jury's finding of direct cause was justified for several reasons. First, evidence from lay witnesses indicated that the ladder was set up at an angle deviating substantially from 75½ degrees. One neighbor testified that the ladder was at a "bad angle," and another neighbor observed that it was at a "dangerous" angle of 60 degrees. Additionally, appellants' expert opined that the ladder was at 68–69 degrees. This is a reasonable basis for the jury's conclusion that the ladder was set up at an unsafe angle.

Second, evidence supported sufficiently the inference that if the ladder slipped out from underneath David Tesmer, it must have been set up with too acute an angle between the legs of the ladder and the ground. It was shown that when ladders are set up at too acute an angle, there is a risk that they will slip. David Tesmer testified that the ladder slid out from underneath him. Circumstantial evidence supported his testimony. After the fall the ladder came to rest with the top of the ladder next to the house and the ladder perpendicular to the wall of the house. White paint was splattered on the base of the house where David Tesmer fell.

Third, and most importantly, we conclude that there was no equally probable theory explaining David Tesmer's fall. The trial court referred to the rule of law that JNOV is required where

> an examination of the evidence shows that plaintiff's theory is no more supported by or consonant with the facts than other theories which could be developed * * *.

*Zinnel v. Berghuis Construction Co.,* 274 N.W.2d 495, 499 (Minn.1979). *See also Elias v. City of St. Paul,* 350 N.W.2d 442 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Oct. 1, 1984) (affirming a directed verdict for defendant because plaintiff's "theory of causation is no more supported by evidence than speculative theories which would relieve defendant from liability"). We are convinced that this is not a case governed by *Zinnel* and its progeny. Here the evidence supports the Tesmers' theory more than other theories, even those devised by speculation. The evidence supports the inferences accepted by the jury, that the ladder was set up at an unsafe angle due to defective instructions and that therefore the ladder slid out from underneath David Tesmer, such that he fell and was injured.

It is conceivable that David Tesmer fell because he reached too far to one side while painting and lost his balance. It is also conceivable that he fell because he stood on the top rung of the ladder. How-

ever, these explanations of the cause of the accident are not equally supported by the evidence. The evidence indicates that David Tesmer was a cautious painter. Nor does the record show that these actions would have caused the ladder to slide out from underneath the user.

Our decision here coincides with one in *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869 (Minn.Ct.App.1984). There we noted that reasonable people could have disagreed whether the appellant's injuries were caused by a log splitter, yet "the underlying circumstances reduce the probability that plaintiff's injuries could be explained by the other causes suggested." *Id.* at 873. We held:

> [T]he evidence does not equally sustain these alternative theories of causation. The evidence is consistent with plaintiff's theory of the case and is sufficiently probable to create a question for the jury.

*Id.* The same probabilities are present here, and the jury's verdict cannot be overturned.

2. Products Liability. The trial court rejected appellants' argument that the evidence supported inferences that the ladder was defective because it did not have spiking feet, and that the use of spiking feet would have prevented the ladder from slipping out from under David Tesmer. Spiking feet are triangular. One foot attaches to each rail of a ladder. The feet can be pivoted so that a flat, rubber covered surface rests on the ground. The feet can also be pivoted so that a steel claw at one point of the triangle bites into the ground and the flat, rubber covered surface is parallel with the rails. The trial court concluded that the ladder David Tesmer used had a spike mechanism in that the flat foot could be rotated so that the end of the foot could bite into the ground. Therefore, the trial court concluded, the absence of clawed spiking feet (the feet did not have claws) could not have caused the fall. The trial court stated:

> The crucial point is that David, on the day of the accident, had not rotated the feet so that the spike was placed into the ground for greater traction. There is absolutely no evidence which would support an inference that if the claw or foot type mechanism had been on the ladder, David would have used it.

 The trial court felt it was equally probable that the incident occurred because David Tesmer did not use the rotating feet which he did have on the ladder. We cannot agree that this inference is equally plausible as a matter of law. First, there were no instructions or other advice to use the ladder's feet in this way. Second, nothing about the ladder's feet suggest such a use. Third, respondent's own expert testified that it would not have been safe to spike the rotating feet on David Tesmer's ladder into the ground. The jury was reasonable in concluding that the lack of clawed spiking feet was a direct cause of the fall.

### DECISION

Testimony supported the jury's finding that respondent's negligence and defective product directly caused appellants' injuries. The verdict cannot be overturned.

Reversed.