Thomas L. HERRON, Appellants,

v.

GREEN TREE ACCEPTANCE,
INC., Respondent.

No. C6–87–317.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Sept. 30, 1987.

William J. Mavity, James G. Ryan, Mavity & Ryan, Minneapolis, for appellants.

Thomas A. Foster, Foster, Waldeck & Lind, Ltd., Minneapolis, for respondent.

Heard, considered, and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LESLIE, Judge.

Appellant Thomas L. Herron brought a breach of employment contract action against respondent Green Tree Acceptance, Inc. Herron's action was based on the company warning and termination procedure contained in a personnel manual Herron received while employed with Green Tree. The trial court directed a verdict against Herron, finding the language of the manual which might constitute an offer to such a contract was not communicated to Herron as an employee, but merely given to him to use in his capacity as a supervisor. We reverse and remand.

## FACTS

In May of 1983 appellant Thomas L. Herron was hired by respondent Green Tree Acceptance, Inc. as an inventory control manager. In that capacity, he supervised

one secretary and one associate. Herron's duties included resale of motor vehicles, predominately mobile homes, which had been repossessed pursuant to the terms of installment sale or loan contracts acquired by Green Tree. The primary object of Herron's position was the rapid resale of repossessed vehicles with minimal loss to the company. Herron did not receive a company personnel manual when he was originally hired.

Five months after Herron was hired he noticed some problems with the secretary he supervised. He consulted with his immediate supervisor, who had also been recently hired. His immediate supervisor could not answer his questions, so Herron was directed to the personnel director. At a subsequent meeting with a senior vice-president and the personnel director, Herron learned the company had recently adopted a new procedure calling for warnings and progressive discipline of employees prior to discharge. Herron received copies of the new policy, as well as the complete personnel manual. The policy was also explained to Herron verbally.

The personnel manual given to Herron was addressed to regional managers and home office supervisors, while the separate policy on written warnings and terminations was addressed to current personnel manual holders as well. The manual itself contained provisions on a variety of subjects including nondiscrimination, employment of relatives, sick pay, recruiting, salary increases, performance evaluations, time sheets, and employee discipline, warning and termination procedures. One section of the manual was entitled "Employee Classifications." The specified classifications were full-time, part-time, supervisory/management employees, clerical exempt employees, and temporary help. Those classifications were used throughout the manual. Some manual provisions applied to certain classifications, but not to others.

The section of the manual which dealt with employee discipline, warning and termination applied to employees generally:

## GREEN TREE ACCEPTANCE, INC.

### Employee Written Warning Procedure and Terminations

Corrective action will be taken in a progressive way to ensure that an employee receives reasonable notice of his or her performance problems. Green Tree Acceptance, Inc. encourages open communication between supervisors and employees so that employees are continually aware of expected standards of performance and behavior, and what the consequences may be. If these standards cannot be met, termination may follow.

For infractions of a relatively minor nature, especially the first occurrence, a positive and informal friendly talk will generally clear up the situation. For problems more serious and/or recurring, a Written Notice of Discipline or Performance Problem must be completed by the supervisor and employee as a permanent part of record. Specific details resulting in the warning must be given along with recommended action that must include improvement objective(s) and a time parameter to complete it in. The employee may provide comments concerning the written warning on the attached sheet if so designated. This form shall be signed and dated by the supervisor and employee. Copies will go to the employee, supervisor, and Home Office Personnel Department.

If, after the time parameter given, the employee fails to correct the behavior or performance problem, there may be no alternative but to dismiss the employee. Normally a 30 day time is recommended as a period for correction and review of the action.

There will be Special Situations when the Written Warning Procedure is not appropriate and an employee should be terminated without this prior notice. These include some of the following violations:

1. Fraud and embezzlement—conclusive evidence of dishonesty.

2. Falsifying employment applications or time sheets.

3. Gross insubordination.

4. *Unauthorized* possession or use of alcohol or drugs on company premises.

In the event of any termination, whether voluntary or not, the Exit Interview Checklist shall be completed and sent to Home Office Personnel Department immediately. Outside of the Special Situations section stated above, *no employee shall be dismissed involuntarily without completion of the Written Warning Procedure.* Any questions concerning this procedure should be directed to the Personnel Department. (Emphasis in original.)

In addition to these provisions, the section on warnings and terminations contained a "Written Notice of Discipline or Performance Problem" and an "Exit Interview Checklist." Upon receipt of this policy and manual, Herron believed that it applied to him in his capacity as an employee of the company as well as his capacity as a supervisor.

Herron successfully maintained his position with the company until January 1984. Resale figures for that month were significantly down. The following month Herron sold fourteen units. Among these units was a 1976 Titan Mobile Home. Larry Coss, the president of Green Tree, was on the bank committee that approved the sale of that particular unit. After inspecting the papers of the transaction, Coss concluded Herron purposely sold the Titan at a low resale price to enable the buyer to repair the vehicle and sell it at a higher price, with Herron sharing in the profit. Consequently, Herron was summarily dismissed effective March 2, 1984.

The written warning procedure was not followed for Herron's termination. A "Written Notice of Discipline or Performance Problem" form was not filled out, but an "Exit Interview Checklist" was completed. Herron's immediate supervisor, Finley Buie, checked the boxes on the form marked "Involuntary Termination" and "Special Situation—No Written Warning necessary." "Per Larry Coss to Finley Buie to let Tom go" was handwritten on the lower right hand corner of the form.

Appellant Herron predicated a breach of employment contract action against his former employer, respondent Green Tree, upon the termination procedure specified in a personnel manual he received during his tenure of employment. Herron claimed the progressive discipline procedure for termination outlined in the manual was part of an employment contract with Green Tree. Herron argued that since Green Tree failed to comply with this procedure in terminating him, they were in breach of contract. Herron also claimed Green Tree was contractually obligated to discharge Herron only for just cause and that just cause was not established.

The trial court directed a verdict against Herron. The court noted that for creation of an employment contract based on a personnel manual *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983) and *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 117 N.W.2d 213 (1962) require the language of the manual constituting the contract offer be communicated to the employee. The court found the manual had been given to Herron in his capacity as a supervisor to apply to his subordinates. The manual was not, however, intended to apply to Herron, as it was not disseminated to him as an employee. Consequently, the court determined, as a matter of law, that the disputed offer had not been communicated to the employee, Herron, as required for formation of such a contract by *Pine River* and *Cederstrand.*

## ISSUE

Did the trial court err in ruling as a matter of law that the language of the personnel manual alleged to be an offer for an employment contract was not communicated to appellant, as such an offer, because it was disseminated to him in his capacity as a supervisor and not as employee?

## ANALYSIS

On review of the trial court's grant of a directed verdict, this court must view the evidence as a whole in the light most favorable to the party against whom the verdict

was directed. *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869, 872 (Minn. Ct.App.1984). A directed verdict is only appropriate in the exceptional case:

> It is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court.

*Id.* at 873 (quoting *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 291–92, 67 N.W.2d 644, 646 (1954)).

Appellant Herron's employment contract claim was based on principles and requirements set out in *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983). The court in *Pine River* held that definite terms in a personnel manual may become part of an employment contract if there is an offer communicated to the employee, acceptance of that offer, and consideration. *Id.* at 626–27. The only issue presented here on appeal is whether the alleged offer, derived from Green Tree's personnel manual, was communicated to Herron as required for formation of a contract. Specifically, whether the personnel manual, which contained the alleged contract offer, was given to Herron as an employee and applied to him as an employee, or whether the personnel manual was merely given to Herron to use in his capacity as a supervisor, the manual not having any application to him as employee.

Case law on the communication requirement for such contracts provides little guidance. The *Pine River* court noted the employee handbook at issue was physically disseminated to the employee involved and thus found the offer there was clearly communicated to that employee. *Id.* at 630. In *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 117 N.W.2d 213 (1962) the court found that an employment policy which was recorded by the company's personnel director, but not disseminated to new employees, was not sufficiently disseminated to meet the communication requirement for formation of a contract. The other cases on this issue largely fall in between the continuum, of actual physical

receipt and no dissemination at all, created by these two cases. *See e.g. University of Minnesota v. Goodkind*, 399 N.W.2d 585 (Minn.Ct.App.1987) *pet. for rev. granted* (Minn. Mar. 25, 1987). No case deals with the issue that arises when materials constituting an offer are clearly disseminated to an employee, but may or may not have been intended to apply to that employee. The distinction between dissemination to employee as employee, as opposed to employee as supervisor, has yet to be specifically addressed in Minnesota law.

 Certainly, for a unilateral contract to be formed the offer must be *communicated to the offeree*. *Pine River*, 333 N.W.2d at 626. If the offer does not exhibit the objective intent to apply to a particular employee, then a contract cannot be formed with that individual, regardless of the definite form of the offer itself. In such a case the employee is not the offeree to whom the offer must be communicated for formation of a contract. Whether the proposal is meant to be an offer for a unilateral contract with a particular person is determined by the outward manifestations of the parties and not their subjective intentions. *Id.* The existence of the contract presents a question of fact to be determined by the finder of fact, the jury. *Brookshaw v. South St. Paul Feed, Inc.*, 381 N.W.2d 33, 36 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. April 11, 1986).

 Viewing the evidence and all reasonable inferences supporting Herron's claim, reasonable people could disagree over whether the alleged contract offer was intended to apply to him. Consequently, we find the trial court erred in directing a verdict in Green Tree's favor.

The warning and termination procedure upon which Herron's claim is based applies on its face to "employees," of which Herron was one. The personnel manual itself makes differentiations based on classifications of employees such as "supervisory/management employees," as opposed to "full-time," "part-time," "clerical exempt employees," and "temporary help." Yet, none of these classifications were used in the section on written warnings and termi-

nations. This yields the interpretation that the section applied to *all* employees of Green Tree, including Herron, despite its address to only regional managers, home office supervisors and current manual owners. Additional support for this proposition is derived from Herron's testimony that he thought the personnel manual was supposed to apply to him as well as the people he supervised. Herron's subjective interpretation was reasonable.

Herron testified that he sought out company help in dealing with his secretary. In a meeting with company representatives the company written warning and termination procedure was explained to Herron. He was handed a copy of the policy and manual and told he "should adhere and follow those procedures." Herron testified, "I felt this policy applied * * * to all employees of Green Tree." Based on the testimony concerning this event and the language of the manual itself, it would have been reasonable for the jury to have found that the policy was intended to apply to Herron as well as his subordinates.

It is interesting to note that subsequent to this communication to Herron, Green Tree did manifest the intent to apply their written warning and termination policy to Herron. An "Exit Interview Checklist" was filled out on Herron as required by the policy section. The checklist specified that no written warning was given because Herron's involuntary termination fell under one of the "Special Situations" that required no written warning. While this fact is not relevant to an assessment of Green Tree's outward manifestations to Herron, it does confirm the logic of the inference that Green Tree intended the warning and termination procedure to apply to Herron.

Regardless of the merits of Herron's claim on the other elements required for formation of the alleged contract and Herron's contract claim itself, reasonable minds could have differed as to whether the disputed policy was intended to apply to Herron. Consequently, the trial court erred in directing a verdict for Green Tree on the communication of offer issue.

**DECISION**

Trial court erred in directing a verdict for respondent, as reasonable minds could differ as to whether the alleged contract offer was communicated to appellant, as required for formation of a unilateral employment contract.

Reversed and remanded.