# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1621

_____

Rua Do; Chui Le, husband and wife,     *
                                            *

           Appellants,              *

                                        * Appeal from the United States

           v.                           * District Court for the

                                        * District of Minnesota.

Wal-Mart Stores,                      *

                                           *

           Appellee.                *

_____

Submitted:  November 16, 1998

Filed:  December 23, 1998

_____

Before BEAM, LAY, and LOKEN, Circuit Judges.

_____

PER CURIAM.

Chui Le slipped and fell in a customer aisle at Wal-Mart Stores, Inc.'s store in Eden Prairie, Minnesota.  Chui Le and her husband Rua Do filed suit in Minnesota state court and the case was removed to federal district court by Wal-Mart.  Following a hearing, the district court granted Wal-Mart's Motion for Summary Judgment, concluding Chui Le had failed to produce sufficient evidence to create a genuine issue of material fact.  We reverse and remand for a plenary trial.

# BACKGROUND

On October 22, 1993, Chui Le arrived at the Eden Prairie Wal-Mart at around 3:30 p.m. to shop. After she had been in the store a short while, she slipped and fell in the cosmetics area. Prior to the fall, Chui Le did not see any substance on the floor. After the fall, she felt some "greasy stuff" on her body and clothing. Chui Le then saw for the first time a puddle on the floor, approximately 12-18 inches in diameter, of the same transparent substance that was on her clothes.

Assistant Manager Marcia Watson was one of the first persons to arrive at the scene of the accident. When she arrived, she saw Chui Le lying on her back in the center of the aisle. A bottle containing Naturessence Water Lily Pore Lotion Astringent ("Naturessence") was lying on the floor next to her. The bottle was a sixteen-ounce, clear plastic bottle with a cap containing a pump for dispensing the liquid. In the district court, for purposes of summary judgment, Wal-Mart did not contest that the substance on the floor was Naturessence and that it came from the bottle found next to Chui Le.

Watson placed the bottle on a shelf and took a photograph of it. The picture showed that the cap was on the bottle and that the bottle was not damaged. Watson then threw the bottle away. She was the only person to ever see the bottle in question. Watson did not notice any cracks in the bottle or its cap, or anything else wrong with the bottle. Watson stated in her deposition that she could not remember whether the cap was on or off the bottle when she saw it lying on the floor next to Chui Le. However, the photograph taken by Watson shows the cap on the bottle.

Dennis Powell, an emergency paramedic who responded to the accident, stated "the liquid extended beyond [Le's] body all the way to the underside of the shelves. . . ." Powell Aff. ¶10. Andrew Rhode, a police officer called to the scene, stated the size of the spill was between one to two square feet. Officer Rhode also

"traced the liquid on the floor back to a shelf where the liquid was dripping from one of the containers on the shelf onto the floor." Rhode Aff. ¶4.[1]

On the day of the accident, fifty-one Wal-Mart employees were on duty. Although an employee was required by Wal-Mart to be in the cosmetic department at all times, the employee assigned to cosmetics was not present at the time of the accident. Jeffrey Fricke, who was a stockman at the Eden Prairie Wal-Mart, stated that on previous occasions the pumps on products would arrive at the store in the up or open position. He also noticed that in the past some of the pumps on the bottles on the shelves were open, and that they were likely opened by customers who were sampling products.

Chui Le hired engineer Donn Peterson to perform tests using similar bottles containing Naturessence.[2] The tests used a pump cap that was identical to the one that was on the bottle involved in the accident. Peterson tried a number of different scenarios with the bottle and the pump cap.

After several tests, Peterson concluded that the bottle would leak substantially only if certain conditions were met. When the bottle was shaken vigorously for ten seconds, the plunger was depressed and released twice, and the bottle was laid on its

---

[1]Because the bottle of Naturessence had apparently already been thrown away at this point, Officer Rhode's observation opens up the possibility that this was a second source of leaking liquid.

[2]The bottles used in Peterson's tests were slightly different than the bottle found lying next to Chui Le; they were two ounces larger and they had fluted, not smooth sides. Peterson was required to use a slightly different bottle. He could not use the actual bottle on the floor because it was thrown away by Assistant Manager Watson. In addition, Peterson could not use the same type of bottle because the bottle manufacturer had ceased making that exact type of bottle. Peterson verified that the difference in the bottles did not impact the outcome of his tests.

side, a puddle 12½ x 11 inches leaked out after 36½ minutes, and after sixty minutes the puddle measured 18½ x 12½ inches. Peterson opined that it would take eighty-three minutes for the spill to reach 18 x 18 inches. Peterson acknowledged that the bottle would leak much more quickly than it did during his tests if the cap was taken off or if the bottle was broken.

Based on these tests, Peterson opined that it would take between 36 to 83 minutes for a puddle 12 to 18 inches in diameter to leak out of a bottle of Naturessence. Chui Le argues this was sufficient time to put Wal-Mart on constructive notice of the hazard. The district court concluded, however, "that Le's theory that Wal-Mart breached the duty of care it owed her by allowing the Naturessence to remain on the floor after Wal-Mart had constructive notice of it . . . [is] based upon speculation and conjecture about how the liquid leaked or spilled out of the bottle." *Rua Do and Chui Le v. Wal-Mart Stores, Inc.*, Civil No. 3-96-751/RHK/JMM, at 10-11 (D. Minn. Jan. 28, 1998) (memorandum opinion and order). The court further observed that "[a] reasonable jury could not find in favor of Le because it would have to assume that numerous facts occurred for which there is no direct or inferential support in the record" and granted summary judgment for Wal-Mart. *Id.* at 11.

## DISCUSSION

### I. Standard of Review

We review a grant of summary judgment de novo. *Grossman v. Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir. 1995). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "We are required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences." *Grossman*, 47 F.3d at 971. At the summary judgment stage, we may not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Supreme Court has instructed that courts

-4-

must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

## II.  Constructive Notice

Chui Le claims Wal-Mart was negligent in maintaining its store by allowing a pool of Naturessence to remain on the floor for a substantial period of time.  In this diversity case, this court applies Minnesota law.  Under Minnesota law, a store owner "is not an insurer of the safety of business invitees," but does owe a duty to business invitees "to keep and maintain [the] premises in a reasonably safe condition." *Wolvert v. Gustafson*, 146 N.W.2d 172, 173 (Minn. 1966).  To recover in a slip-and-fall case, the plaintiff must establish that the business operator "had actual knowledge of the defect causing the injury or that it had existed for a sufficient period of time to charge the operator with constructive notice of its presence." *Id.*  A store owner is charged with constructive notice of a foreign substance when the substance has been present for such a length of time that, in the exercise of ordinary care, the store owner or the store's employees should have discovered the foreign substance through reasonable inspection and removed it. *See Norman v. Tradehome Shoe Stores, Inc.*, 132 N.W.2d 745, 749 (Minn. 1965).

It is undisputed that Wal-Mart did not have actual notice of the spill.  Therefore, the issue presented by this case is whether Chui Le presented sufficient evidence that the liquid was on the floor for a sufficient period of time to charge Wal-Mart with constructive notice.  Chui Le argues the evidence she presented shows that the only way the liquid could have escaped from the bottle was through a slow leak, that it would have taken 36 to 83 minutes to create a puddle 12 to 18 inches in diameter, and that this was enough time to put Wal-Mart on constructive notice.  Wal-Mart argues it is equally plausible that the leak could have occurred from a crack in the bottle or that a customer may have taken the cap off and then spilled the liquid. Thus, Wal-Mart

contends the spill could have occurred much more quickly, in which case it would be improper to charge it with constructive notice of the spill.

Chui Le presented evidence through the tests of its expert Peterson that the liquid would not leak out of a closed pump. Thus, if the bottle is not broken and the cap is on, the only possible way in which the liquid could have leaked was through an open pump. Peterson's tests showed that the liquid would leak out of an open pump only if certain conditions were met. Under these conditions it took a substantial amount of time to create a puddle 12-18 inches in diameter.

Wal-Mart argues that Peterson's conclusions are flawed because they require a substantial amount of customer intervention before the bottle will leak. However, there is support in the record for the proposition that customers depressed the pumps on bottles. Stockman Jeffrey Fricke stated that on some occasions bottles with pump caps would arrive at the store in the open, unlocked position and that customers would also open pump caps to sample products and then leave the open bottle on the shelves.

Several cases highlighted by the Supreme Court demonstrate that the nonmoving party may draw upon favorable inferences from circumstance evidence to defeat summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (presence of state police officer provides circumstantial evidence of state conspiracy to violate civil rights of plaintiff); *Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33 (D.C. Cir. 1987) *on remand from Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (circumstantial evidence that decedent had been exposed to defendant's product sufficient to overcome summary judgment). *See also Bahl v. Country Club Market, Inc.*, 410 N.W.2d 916 (Minn. Ct. App. 1987) (holding circumstantial proof was sufficient to uphold jury verdict that water had accumulated on store floor long enough that defendant should have known of its condition). *See also Wohlfeil v. Murray Mach., Inc.*, 344 N.W.2d 869 (Minn. Ct. App. 1984); *Tesmer v. Rich Ladder Co.*, 380 N.W.2d 203 (Minn. Ct. App. 1986).

As previously discussed, the present case is not a case in which plaintiff failed to produce any evidence on how long the liquid was on the floor. Rather, there is conflicting evidence as to how long the liquid was on the floor. Because the photograph supports an inference the liquid leaked through an open pump, and the tests done by Peterson showed that the rate of leakage can properly be characterized as a drip rather than a gush, the size of the spill is sufficient circumstantial evidence to create a question of fact whether the liquid was on the floor for a sufficient length of time to properly charge Wal-Mart with constructive notice. Such factual disputes preclude the grant of summary judgment. Chui Le's theory as to how long the liquid was on the floor is equally as plausible, if not more plausible, than Wal-Mart's theory. We believe that the issue of constructive notice is not so one-sided that Wal-Mart is entitled to judgment as a matter of law. Accordingly, a genuine issue of material fact exists regarding how long the liquid was on the floor and whether Wal-Mart had constructive notice. Of course, whether the evidence should result in judgment on the merits for Chui Le is another matter altogether, on which it is not our role to comment.

## CONCLUSION

Viewing the evidence in the light most favorable to Chui Le, we conclude Chui Le presented enough evidence to allow a reasonable jury to find that the spill existed for a sufficient length of time such that Wal-Mart should have discovered it through reasonable inspection and is properly charged with constructive notice. Accordingly, we reverse and remand for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.