## WARREN L. VADNAIS AND ANOTHER v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY.

243 N. W. 2d 45.

June 4, 1976—No. 45675.

---

*Peterson, Bell & Converse, Willard L. Converse,* and *Martin J. Costello,* for appellant.

*Stearns, Jacobowski, Doffing, Hennessy & Peters, William J. Hennessy,* and *William A. Peters,* for respondents.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order granting a new trial in an action to recover on a fire insurance policy. Defendant insurer refused to pay, claiming the fire was caused by an intentional act of plaintiff. The matter was tried in Washington County District Court. The jury returned a verdict in favor of defendant insurer. The court granted plaintiff's motion for a new trial. Defendant petitioned this court for discretionary review, which was granted.[1] We reverse.

At the time of trial, Warren Vadnais, his wife and youngest son lived in a rural area in Forest Lake, Minnesota. Vadnais was vice president of Electro Watchman, Inc., a company owned by his father, brother, and himself that sells, installs, and maintains

---

[1] An appeal from an order granting a new trial on the ground that the verdict is not justified by the evidence is not appealable of right. Rule 103.03(e), Rules of Civil Appellate Procedure.

fire-detection alarm systems and burglar alarm systems. His income was $26,000 per year, plus bonus and fringe benefits. He had debts of $15,000, excluding the mortgage on his house. He was in arrears in making support payments for his first marriage. In July 1973, Vadnais agreed with his attorney to turn over his entire salary check to the attorney, who would distribute the money between Vadnais and his creditors.

The Vadnais home was purchased for $16,000 in 1968. The home was in poor condition, and the Vadnaises made numerous improvements in it. The improvements did not include installing a fire detection alarm system. In 1971, Vadnais increased the insurance on the home to $26,000. On May 8, 1973, he increased the insurance to $50,000.

A fire broke out in the Vadnais home in the early morning hours of August 28, 1973. On the previous day, Mrs. Vadnais and their son left for a short vacation. They intended to be gone a couple of days, visiting the North Shore, Grand Rapids, Bemidji, Brainerd, and then returning home. After seeing his family off that August afternoon, Vadnais removed his two uninsured snowmobiles from the home and took them to Forest Lake for servicing for the next snowmobile season. At 5 p. m., Vadnais returned home, packed a suitcase for a business trip he was planning to take the next day, and left again at 7 p. m. in a Pontiac he had purchased for an older son who was not then living at home. During the next few hours, Vadnais visited several taverns in the area. He testified that he left the Red Mill tavern at 1:30 a. m. after playing pool there since 10 p. m. Vadnais intended at the time to travel to another tavern in Wisconsin. He testified that he pulled off the road somewhere between Hugo and White Bear Lake and slept in his car for several hours. When he woke up, Vadnais returned home to find his house in flames and the fire department on the scene.

Sometime after midnight, but before the fire broke out, two teenage girls were walking on a road in the vicinity of the Vadnais home. The girls approached a car, which one testified

was a "regular sized" car, parked on the roadside and asked who the driver was. One of the girls testified that she thought the answer was, "I'm the warden." The other girl testified that she thought the answer was, "I'm Warren." The first girl described the man as bald, oval-faced, and smoking. She testified that Warren Vadnais, as he looked in the courtroom, had the appearance of the car's occupant.

One of the Vadnais' neighbors testified that there are a number of dogs in the neighborhood which customarily bark during the night. She was awakened two or three times during the night in question by dogs barking. The Vadnais' dogs, who usually bark along with the others, were not barking at these times.

Another neighbor testified that an automobile twice entered the driveway of her uncompleted home, which was across the road from the Vadnais home. When she went out and shined a light on the car, the driver turned the car around and drove away. The woman then fell asleep at the kitchen table, woke up around 3:45 a. m., observed the Vadnais house on fire, and had her daughter call the fire department. The deputy state fire marshal later made a plaster cast of the impression left by the car, but the cast was not compared to the Vadnais' automobiles.

Vadnais stored two gasoline cans at the extreme north point of a new addition which he was constructing. After the fire, one of the gasoline cans was found in the part of the new addition that was to be the family room, immediately next to the house proper and over 50 feet from where Vadnais had stored it. The can had been partially filled with gasoline. The top had been blown off the can. The other gasoline can was found where Vadnais had left it and was not as badly damaged. Both the top and bottom of the blown can were found next to each other. Defendant's expert testified that the area where the topless can was found was the point of origin of the fire. The expert did not examine the fuse box, the hot water heater, or the furnace. The fire completely destroyed the new addition and the northwest portion of the home next to the new addition. There was little damage to the basement.

Vadnais testified that someone may have set the fire for the purpose of killing him. After the fire was out, Vadnais went to the trunk of the car he had been driving that night and pulled out a fire insurance policy from his brief case. Vadnais had a safety deposit box which he had closed out the previous month. After closing out the box, he put all his important papers in a brief case which he carried with him.

The Vadnaises submitted a claim for $80,700 following the fire. The claim included damages for new furniture purchased for cash and without receipts.

On October 18, 1974, the jury returned a unanimous verdict for the defendant. Plaintiff moved for a new trial on the ground that the court committed errors of law, which included allowing defendant's expert to state an opinion as to the origin of the fire, and on the ground that the verdict was not justified by the evidence. The trial judge granted the motion for new trial on the ground that "the verdict of the Jury is not supported by the evidence and is a result of passion and prejudice on the part of the Jury." The court in its memorandum said:

"The Court feels that the verdict of the Jury is not supported by the evidence and is a result of passion and prejudice on the part of the Jury.

"There is circumstantial evidence giving a suspicion of arson on the part of the Plaintiff Warren L. Vadnais, however, this circumstantial evidence could also be just coincidental.

"The defense that the fire was a result of arson by plaintiff Warren Vadnais is a charge of a most serious felony crime of which, in a criminal case, he would be presumed innocent and proof of his guilt would have to be beyond a reasonable doubt.

"While such may not be required in a civil case, the evidence at least should be clear and convincing of the incendiary origin of the fire by said plaintiff.

"Plaintiff had spent many years remodeling and enlarging his home. That he would destroy the long and arduous efforts

of his handiwork for financial gain should be supported by clear and convincing evidence.

"On the other hand, the day before the fire plaintiff sent his wife and six year old son on a short vacation trip to northern Minnesota and while she was gone plaintiff Warren Vadnais went out on the town and proceeded to do considerable drinking of intoxicating liquor to the extent that he was not satisfied with the amount that he had received in Minnesota at the closing of the bars here in Minnesota but proceeded to Wisconsin for further drinking of liquor. This carousing while his wife and son were out of town could very well have inflamed the jury and created prejudice against him because of such conduct. This heavy drinking could also account for his loss of memory as to the exact location where he drove off the road to sleep.

\*  \*  \*  \*  \*

"Also, there was no evidence that he had overinsured his home and the fact that the two snowmobiles were out of the garage being tuned up for winter use could also be only coincidental."

The issue presented is whether the trial court erred in ordering a new trial on the grounds (1) that the jury's verdict was not supported by the evidence, and (2) that said verdict was a result of passion and prejudice.

■ Normally, an order granting a new trial for insufficiency of evidence will not be reversed unless the evidence is manifestly and palpably in favor of the verdict. Hicks v. Stone, 13 Minn. 398 (434) (1868). This court also has held, however, in Hull v. Minneapolis, St. P. & S. Ste. M. Ry. Co. 116 Minn. 349, 356, 133 N. W. 852, 855 (1911):

"The rule of Hicks v. Stone was designed to include only those cases where the trial court for reasons peculiarly within its knowledge is justified in concluding that the ends of justice will be best served by submitting the evidence to another jury. Such a conclusion may be founded in a doubt as to the credibility of the witnesses, a doubt as to the probative force and character of the evidence, or a feeling gained from the course and manner

of the trial, and the atmosphere thereof which is incapable of being spread upon the record, that a fair and impartial trial was not had.

"These and kindred reasons are the basis for the discretionary power of the court in ordering a new trial on the ground that the evidence does not support the verdict. The power is not, however, an arbitrary one, and must be founded upon reasons similar to those stated. Where the evidence in the opinion of the court fails to establish a material fact, a fact essential to the cause of action or defense, an order granting a new trial for that reason does not spring from the discretionary power of the court."

The new trial order in Hull was based, not on the ground that the verdict was not justified by the evidence, but on the ground that as a matter of law circumstantial evidence was insufficient. In the instant case the trial court explained its holding that the evidence was insufficient as follows:

"* * * [T]he evidence at least should be clear and convincing of the incendiary origin of the fire by said plaintiff."

Defendant argues that the trial court erred in using that standard to test the sufficiency of the evidence and that the defendant insurer's burden was only to prove the defense of incendiarism by the plaintiff by a preponderance of the evidence. 7A Dunnell, Dig. (3 ed.) § 3473a; Schornak v. St. Paul Fire & Marine Ins. Co. 96 Minn. 299, 104 N. W. 1087 (1905). Plaintiffs argue that, since no objection was made to the jury instruction at trial, that instruction became the law of the case and is not properly before the court. This is perverse reasoning, however. Defendant is not challenging the jury instruction but rather the rule of law which the trial court employed in ordering a new trial. The trial court was clearly in error in holding that a verdict here is not supported by the evidence unless that evidence is clear and convincing. A trial court does not have discretion to employ an erroneous rule of law in ordering a new trial. Buck v. Buck, 122 Minn. 463, 468, 142 N. W. 729, 731 (1913). See, also, Koenig

v. Ludowese, 308 Minn. 380, 243 N. W. 2d 29 (1976); Grorud v. Thomasson, 287 Minn. 531, 177 N. W. 2d 51 (1970).

■ The trial court also held that the jury's verdict was a result of passion and prejudice. It appears that the trial court was only speculating as to the possibility of prejudice. No specific examples or instances of prejudice are cited. There is no specific provision in Rule 59.01 permitting a trial court to order a new trial on the basis of suspected jury prejudice in the absence of evidence of alleged misconduct or an excessive or insufficient damage award. Here, jury prejudice seems to be only a makeweight for finding the evidence insufficient. The only explanation of the court's holding is:

"* * * [Plaintiff's] carousing while his wife and son were out of town could very well have inflamed the jury and created prejudice against him because of such conduct."

Defendant argues that this testimony is relevant to the matter at trial and must be admitted in any new trial for the jury's consideration. The trial court's holding violates the principle of the Hull case. It is not apparent how the ends of justice will better be served by ordering another trial in which a jury must be presented with the same evidence.

Reversed.