**WESTBROOK STATE BANK,**
Respondent,

v.

**Everett JOHNSON, et al., Appellants,**

**Federal Land Bank of St. Paul, et al., Defendants.**

Nos. C5–84–696, C7–84–697.

Court of Appeals of Minnesota.

Nov. 27, 1984.

Joel C. Wiltrout, Brecht, Hedeen, Hughes & Wiltrout, Worthington, Michael A. Stern, Fredrikson & Byron, Minneapolis, for respondent.

Michael K. Riley, W.M. Gustafson, MacKenzie, Gustafson & Lucas, Ltd., St. Peter, for appellants.

Heard, considered and decided by POPOVICH, C.J., and HUSPENI and FORSBERG, JJ.

## OPINION

POPOVICH, Chief Judge.

Respondent Westbrook Bank sued appellants Everett and Eleanor Johnson on a promissory note signed by Everett Johnson and his son Steven, and on an assignment of a contract for deed signed by Everett

and Eleanor Johnson. The Johnsons counterclaimed alleging false representations. After a jury found in favor of the Johnsons, the trial court granted a new trial.

The Johnsons filed an appeal and a petition for discretionary review. We dismissed the appeal and denied the petition under Minn.R.Civ.App.P. 103.03(d). Appellants moved for reconsideration and we deferred the motion until briefing on the merits was complete. We grant the reconsideration, affirm and reverse in part, and remand.

## FACTS

Steve Johnson operated the Tree People Tree Service, which was financed by a series of loans from Westbrook State Bank. By summer 1979, he was in default on several loans. Westbrook Bank indicated it would call the notes unless additional security was provided. At that time, Steve needed a $9,500 performance bond and an additional $2,000 to cover overdrafts. Steve asked his father, Everett Johnson, to help obtain the performance bond.

Steve and a bank officer, Dennis Klute, agreed to consolidate the loans and new advances into a $63,300 promissory note due December 1, 1979. A security agreement was prepared listing certain property of Tree People. Klute alleged a condition of the consolidated note was that Everett and Eleanor Johnson assign their interest in a $163,000 contract for deed to the bank as security. Klute testified he discussed that arrangement with both Steven and Everett on August 17, 1979.

Steve testified he signed the documents on August 17 but was not at the bank with his father. Everett testified he went to the bank with another son and claims Klute just handed him a paper and said "Sign here." Everett signed it without reading it, thinking it was a $9,500 performance bond. He then signed the security agreement, also without reading it. Everett's eyesight was deteriorating, but he could have read the numbers on the documents if he tried. Everett had signed and read promissory notes, security agreements, and performance bonds before.

Everett testified the contract for deed was discussed on August 17 but was not assigned because he did not have it with him. On December 10, 1979, Everett and Eleanor brought the contract for deed to Klute, and again discussed assignment as additional security for the loan. By that time Steve had defaulted on the $63,300 note, but Everett claims he knew nothing about his liability on that note. The Johnsons did not sign the assignment until February 15, 1980. They testified Klute said the assignment was just for the bank examiner and did not inform them the bank would receive the payments.

By letter dated August 21, 1980, the bank notified Everett of their intent to collect the note. Everett claims this was his first notice he had signed a promissory note. The bank repossessed the tree service collateral in fall 1980 and sold the equipment over the winter. A $5,000 payment on the contract for deed was due February 1, 1981, which the Johnsons did not receive because of the assignment. Everett had cataract surgery in October 1980, was unable to work for some time before the surgery, and his eyesight had not recovered sufficiently by the trial to allow him to work. He also had a heart attack in June 1981. Both Johnsons testified they worried about not being able to pay bills, and having to survive on Eleanor's $9,000 salary but did not seek medical attention for their stress.

Westbrook sued the Johnsons to collect on the promissory note and the assignment, claiming an equitable mortgage. The Johnsons' counterclaimed alleging false representations and seeking actual and punitive damages. The trial court orally directed a verdict against the bank on the equitable mortgage issue. To support their punitive damages claim, the Johnsons introduced evidence the bank had total liabilities and assets of $23,000,000. The bank president, however, testified that the bank's net worth was near $2 million.

In closing argument, Johnsons' counsel asked for $50,000 in actual damages and $230,000 punitive damages. Counsel also referred to the bank several times as "moneychangers," and said the bank treated Everett as a "sucker." He said the punitive damages were "not to give Everett or Eleanor anything." The bank did not object to these statements.

The jury found (1) the bank made fraudulent misrepresentations to the Johnsons inducing Everett to sign the promissory note and assign the contract for deed and (2) that Westbrook received $3,500 less than the fair market value for the collateral it repossessed. The jury awarded the Johnsons $39,780 each and $230,000 in punitive damages.

On January 24, 1984, the trial court ordered judgment on the jury's special verdict, but delayed entry of judgment until further order. On February 8, 1984, the bank served its motion for judgment notwithstanding the verdict, a new trial, or remittitur. Westbrook alleged (1) the damages were excessive and given under the influence of passion and prejudice, (2) the verdict was not supported by the evidence, and (3) misconduct of counsel in closing argument. The Johnsons moved for entry of judgment. The trial court granted respondent's motion for new trial on all issues stating:

> [T]he damages awarded by the jury, both actual and punitive, were grossly excessive and appear to have been given under influence of passion and prejudice. The Court further believes that said passion and prejudice may have affected the jury's determination of the other issues in the case, as well as damages.

## ISSUE

Did the trial court abuse its discretion in granting a new trial?

## ANALYSIS

1. Minn.R.Civ.App.P. 103.03 states:

An appeal may be taken to the Court of Appeals:

\* \* \* \* \* \*

(d) \* \* \* from an order granting a new trial if the trial court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively upon errors of law occurring at the trial, and upon no other ground; and the trial court shall specify such errors in its order or memorandum, but upon appeal, such order granting a new trial may be sustained for errors of law prejudicial to respondent other than those specified by the trial court.

*Id.*

■ The granting of a new trial on grounds other than errors of law is "a discretionary matter from which there is no absolute right of appeal." *Cashman v. Matson*, 286 Minn. 516, 517, 174 N.W.2d 236, 237 (1970); *see Vadnais v. American Family Mutual Insurance Company*, 309 Minn. 97, 98 n. 1, 243 N.W.2d 45, 46 n. 1 (1976).

■ Under the unique facts of this case, which involves an order for a new trial on the issue of liability as well as damages, and an apparent reversal by the trial court of its own order for a directed verdict on the equitable mortgage issue, we find it necessary in the interest of justice and judicial economy to review this matter.

2. A new trial may be granted on the following grounds:

(2) Misconduct of the jury or prevailing party;

\* \* \* \* \* \*

(5) Excessive or insufficient damages, appearing to have been given under the influence of passion or prejudice;

(6) Errors of law occurring at the trial, and objected to at the time \* \* \*;

(7) The verdict, decision, or report is not justified by the evidence \* \* \*.

Minn.R.Civ.P. 59.01.

The granting of a new trial rests almost entirely in the discretion of the trial court and will be reversed only for a clear abuse

of discretion. *Connolly v. Nicollet Hotel,* 258 Minn. 405, 407, 104 N.W.2d 721, 724 (1960).

The trial court granted the motion based on statements of Johnsons' counsel in closing arguments which could have influenced the jury by creating passion and prejudice, evidenced by excessive damages not supported by the evidence. There was very little evidence of economic loss to the Johnsons, other than the loss of the use of $5,000 for one year. Their right to damages for emotional distress is governed by *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428 (Minn.1983). We defer to the trial court's discretionary decision that the damages are excessive and unsubstantiated. However, a remittitur should have been proposed as an alternative to a new trial.

3. The trial court also granted a new trial on liability, suggesting Johnsons' counsel's remarks may have affected the jury's deliberations on this issue. The primary consideration in determining whether counsel's admittedly intemperate statements warrant a new trial is the prejudicial effect on the jury. *Janssen v. Neal,* 302 Minn. 177, 182, 223 N.W.2d 804, 807 (1974). The bank's counsel did not object to the statements at the time of trial.

We cannot say a reasonable jury would not have answered the special verdict interrogatories the same way even without hearing appellants' closing argument. In a similar matter, the Minnesota Supreme Court stated:

It is unlikely that it [the jury] would have found against defendant entirely as a result of the statements of plaintiff's counsel which have been complained of.

*Stroncek v. Berkshire Life Insurance Company,* 292 Minn. 57, 65–66, 193 N.W.2d 286, 291 (1971). It is not enough that the trial court would have decided the case differently.

We do not believe "the ends of justice will better be served by ordering another trial in which a jury must be presented with the same evidence." *Vadnais,* 309 Minn. at 104, 243 N.W.2d at 49.

## DECISION

The order granting a new trial on liability is reversed. We remand to the trial court to determine a reasonable remittitur or, if not accepted by appellants, a new trial on damages alone.

Affirmed and reversed in part, and remanded.