*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1169**

Hope Larsen,
Appellant,

vs.

Erin Lee Mullen and d/b/a Running LL's Ranch,
Respondent.

**Filed March 23, 2026**
**Affirmed**
**Frisch, Chief Judge**

Olmsted County District Court
File No. 55-CV-23-7171

Sarah R. Jewell, Adam R. Seward, River Valley Law, P.A., Waite Park, Minnesota (for appellant)

Katherine B. Freitag, Bloomquist Law Firm, LLC, Park Rapids, Minnesota (for respondent)

Considered and decided by Ede, Presiding Judge; Frisch, Chief Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Chief Judge

Appellant argues that the district court abused its discretion by denying her motion for a new trial based on what she alleges are irregularities occurring before and during trial.

Because we discern no prejudicial error or abuse of discretion by the district court, we affirm.

**FACTS**

This matter arises from a dispute between appellant Hope Larsen and respondent Erin Lee Mullen (Lee) and Running LL's Ranch, concerning the purchase of a horse. Larsen alleged that Lee defrauded Larsen and breached a contract between them after Lee delivered a lame horse. Lee and her husband counterclaimed for defamation and defamation per se arising from a Facebook post by Larsen about the dispute.

The district court issued an amended scheduling order with the following relevant dates: a November 27 pretrial hearing, a December 9 deadline for trial depositions, and a December 9 trial date. No party objected to the scheduling order.

At the pretrial hearing, the district court heard arguments on various motions in limine. The district court originally notified the parties that it had allotted 30 minutes for the hearing on the motions but extended the hearing time to 45 minutes. No party objected to the length of the hearing at the time. Larsen objected to two trial depositions, noticed to occur six days before trial. The trial witnesses had been previously identified on Lee's witness list, but Larsen elected not to take discovery depositions of the witnesses.[1] The district court allowed the depositions, noting that the scheduling order allowed trial depositions to be taken through the first day of trial.

---

[1] Larsen also identified one of the same trial witnesses on her witness list.

Trial commenced as scheduled. During the four-day trial, the district court held nine bench conferences to address evidentiary and procedural issues. Of the nine bench conferences, one occurred during jury selection, and three occurred during natural breaks in the trial. The remaining five bench conferences occurred during Larsen's case-in-chief, mostly precipitated by Lee's objections. The jury was unable to hear the substance of any bench conference. No party objected to the district court's procedure in holding bench conferences.

On the third day of trial, a reader read the transcript of a witness's trial deposition. During that testimony, the transcript reader inadvertently read a redacted portion of the transcript referencing the deponent as "shady." Lee objected, and the district court sustained the objection, striking that portion of the record. The statement was not mentioned again during the trial. The district court later instructed the jury to consider only evidence admitted at trial.

Larsen also sought to impeach Lee through testimony from Lee's former business partner. Before trial, the district court excluded the impeachment witness because the district court had believed that the witness was offered as a fact witness who would provide character evidence, and the witness was not timely disclosed. The district court later realized that the witness was to be offered solely for impeachment purposes, and it notified the parties that the impeachment witness would be allowed to present limited testimony, excluding specific instances of alleged conduct. Larsen chose not to offer any testimony from the impeachment witness.

Larsen proposed a special jury instruction related to Lee's counterclaim. The district court rejected the instruction as duplicative and confusing, instead providing the jury with the model jury instruction on the topic.

After deliberating for around two hours, the jury returned a verdict for Lee on her defamation per se counterclaim and awarded a total of $150,000 in damages, broken down into $37,500 increments each for reputational harm, mental distress, humiliation, and embarrassment. Larsen moved for a new trial, identifying the following bases for relief: (1) the length of the pretrial hearing and the scheduling of trial depositions; (2) the number of bench conferences, the inadvertent reading of a redacted portion of a deposition transcript, and limitations on the impeachment witness's testimony; (3) the district court's refusal to instruct the jury on defamation per se as requested by Larsen; and (4) the amount of the damages award. The district court, in a comprehensive and detailed order, denied Larsen's motion for a new trial.

Larsen appeals.

## DECISION

Larsen argues that she is entitled to a new trial given the collective impact of alleged irregularities in pretrial and trial proceedings.[2] The decision whether to grant a new trial

---

[2] Larsen argues that we may review alleged irregularities occurring pretrial. Generally, events occurring pretrial cannot support a motion for a new trial, because an appeal from an order denying a new trial reviews only errors that occurred during trial. *Bains v. Piper, Jaffray & Hopwood, Inc.*, 497 N.W.2d 263, 271 (Minn. App. 1993), *rev. denied* (Minn. Apr. 20, 1993). "Pre-trial orders are reviewable *only* on appeal from a final judgment." *Stockdale Bancorporation v. Kjellberg*, 479 N.W.2d 438, 438 (Minn. App. 1992). Indeed, Larsen's briefing in this court and oral argument focus on alleged errors stemming from the district court's order denying her motion for a new trial. But, given that Larsen included

rests solely in the district court's discretion and will be reversed only for a clear abuse of that discretion. *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018). As relevant here, a new trial may be granted for: an "[i]rregularity in the proceedings of the court . . . whereby the moving party was deprived of a fair trial"; an award of excessive damages "appearing to have been given under the influence of passion or prejudice"; or for objected-to errors of law or unobjected-to errors of law "if no objection need have been made pursuant to Rules 46 and 51." Minn. R. Civ. P. 59.01(a), (e), (f). It is not enough for a moving party to establish that one of the grounds for a new trial exists; they must also demonstrate that they were prejudiced by the district court's ruling. *Torchwood Props., LLC v. McKinnon*, 784 N.W.2d 416, 419 (Minn. App. 2010); *see also Wild v. Rarig*, 234 N.W.2d 775, 786 (Minn. 1975) (stating that prejudice is "[t]he primary consideration in determining whether to grant a new trial"). Against this backdrop, we consider Larsen's alleged assignments of error.

Larsen first asserts various irregularities associated with pretrial matters. Larsen contends that the district court abused its discretion in scheduling the pretrial hearing for only 30 minutes and granting Lee's request to depose two witnesses in the week before trial. We are not convinced that any irregularity occurred. The district court has broad authority to manage proceedings before and during trial. *See* Minn. Gen. R. Prac. 111 (scheduling), 115 (motion practice); *McIntosh v. Davis*, 441 N.W.2d 115, 119 (Minn. 1989)

---

the final judgment in her notice of appeal and argued at oral argument before this court that she intended to appeal from that final judgment, we will generally construe the appeal to also include an appeal from the final judgment.

("The general notion that [district] courts are responsible for case management and must control calendars . . . is widely accepted."). "[T]he district court has considerable discretion in scheduling matters and in furthering what it has identified as the interests of judicial administration and economy." *Rice Park Props. v. Robins, Kaplan, Miller & Ciresi*, 532 N.W.2d 556, 556 (Minn. 1995). We are unaware of any authority supporting the contention that the district court's decision allotting a specified amount of time for motion hearings amounts to an irregularity, and Larsen cites none. We also discern no irregularity in the district court's consideration of the pretrial matters. The record establishes that the district court considered and decided several motions in limine and heard arguments from Larsen and Lee at the pretrial hearing. The district court allowed more than the allotted time for the parties to argue the motions, no party asked for more time for oral argument,[3] and no party supplemented its oral argument with additional written memoranda. We therefore discern no irregularity in the length of the pretrial hearing. *See Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (stating that "error is never presumed" on appeal and "the burden of showing error rests upon the one who relies upon it" (quotation omitted)). And we discern no prejudice to Larsen associated with the length of the pretrial hearing.

The district court also did not abuse its discretion in allowing Lee to take two trial depositions. The district court issued a scheduling order as authorized by the rules of civil

---

[3] Larsen contends that she "strongly object[ed]" to the hearing length. The record does not support that assertion. The record shows that Larsen objected to the district court's instruction that the parties schedule depositions before trial; the record does not reflect any objection to the length of the pretrial hearing.

procedure and the general rules of practice. Minn. R. Civ. P. 16.02; Minn. Gen. R. Prac. 111.03. That scheduling order applies to the proceedings unless the parties, with good cause, move to modify the order. Minn. R. Civ. P. 16.02; Minn. Gen. R. Prac. 111.04. These rules are consistent with the district court's broad discretion to control its docket— management decisions that we do not reverse absent an abuse of discretion. *See Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn. App. 2006).

Here, the scheduling order allowed for trial depositions through the first day of trial. Consistent with that order, Lee scheduled two trial depositions of witnesses essential to her defense who lived outside the United States. The district court allowed the trial depositions to proceed, ordering that they be scheduled to accommodate Larsen's schedule. Because the district court's order is consistent with its longstanding scheduling order, we discern no irregularity in these proceedings. *See Maudsley v. Pederson*, 676 N.W.2d 8, 12 (Minn. App. 2004) (stating that "whether or not to enforce its own scheduling order is clearly within the district court's discretion").

At oral argument before this court, Larsen emphasized the inconvenience of taking trial depositions close to the trial date. But inconvenience does not equal prejudice. We note that Larsen did not object to the dates set forth in the scheduling order, that the witnesses had been previously disclosed on Lee's witness list, and that Larsen chose not to take discovery depositions of these witnesses in advance of trial. We therefore discern no prejudice associated with the district court's decision.

Larsen next argues that certain alleged irregularities occurring during trial merit a new trial. She asserts that the nine bench conferences during trial interrupted her case-in-

7

chief and soured the jury's opinion of her case. We find no record support for these assertions, nor do we perceive any irregularity with the district court's use of bench conferences—a common trial-management tool—to address matters related to jury selection, scheduling, and evidentiary objections. *See, e.g.*, *State v. Smith*, 876 N.W.2d 310, 330 (Minn. 2016) (describing "routine evidentiary rulings and matters traditionally addressed during private bench conferences" as "routine administrative proceedings"); *Wohlfeil v. Murray Mach., Inc.*, 344 N.W.2d 869, 873-75 (Minn. App. 1984) (analyzing an evidentiary issue discussed at two bench conferences during trial). In any event, Larsen has not shown any prejudice associated with the bench conferences. *See Vadnais v. Am. Fam. Mut. Ins. Co.*, 243 N.W.2d 45, 49 (Minn. 1976) (stating that a district court may not "order a new trial on the basis of suspected jury prejudice in the absence of evidence of alleged misconduct or an excessive or insufficient damage award").

Larsen also argues that the inadvertent reading of one redacted sentence in a deposition transcript, the district court's rulings regarding her impeachment witness, the refusal to instruct the jury on defamation per se in the manner she requested, and the jury's damages award support a new trial. We are not persuaded.

The district court corrected any error associated with the inadvertent reading of a redacted sentence by striking the matter from the record and instructing the jury to consider only evidence admitted at trial. *Boschee v. Duevel*, 530 N.W.2d 834, 840 (Minn. App. 1995) ("Steps taken by a trial court in response to an 'irregularity' can cure the potential prejudice to a party."). We presume that jurors follow the district court's instructions.

*Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 630 (Minn. 2012). And Larsen identifies no associated prejudice.

Larsen likewise identifies no prejudice resulting from the district court's rulings related to her impeachment witness, whom she chose to withdraw as a witness at trial. We cannot ascribe any prejudicial irregularity to the district court under such circumstances.

We likewise discern no prejudicial error associated with the district court's choice to provide the following model jury instruction:

> A statement or communication is false if it is not substantially accurate. Substantial accuracy does not require every word to be true. A statement or communication is not substantially accurate if its essence is not true.

4 *Minnesota Practice*, CIVJIG 50.25 (Supp. 2025). Larsen does not allege that this instruction "destroys the substantial correctness of the charge as a whole, causes a miscarriage of justice, or results in substantial prejudice on an issue vital in the litigation." *H Window Co. v. Cascade Wood Prods., Inc.*, 596 N.W.2d 271, 275 (Minn. App. 1999) (quotation omitted), *rev. denied* (Minn. Aug. 17, 1999). "[W]e will not reverse where jury instructions overall fairly and correctly state the applicable law." *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 629 (Minn. 2022) (quotation omitted). Because the district court's instruction was a fair and correct statement of the applicable law, we discern no abuse of discretion by the district court in rejecting Larsen's proposed alternative instruction. *See Larson v. Gannett Co.*, 940 N.W.2d 120, 142 (Minn. 2020) (noting that the district court's use of CIVJIG 50.25 was proper instruction "on the

'substantial accuracy' standard that applies in deciding the falsity element in a general defamation case not involving a privilege").

Finally, we discern no error in the jury's award of $150,000 on Lee's defamation per se counterclaim. A new trial may be granted for excessive damages "appearing to have been given under the influence of passion or prejudice." Minn. R. Civ. P. 59.01(e). "A [district] court is granted the broadest possible discretion in determining whether a new trial should be granted for excessive damages." *Dailey v. Wiborg*, 366 N.W.2d 736, 737 (Minn. App. 1985) (citing *Bisbee v. Ruppert*, 235 N.W.2d 364, 370 (Minn. 1975)). We do not focus on whether damages are awarded in an odd or even amount or the length of jury deliberations in assessing whether to uphold a jury's award. *Id.* Instead, we defer to the jury's verdict. *See Frankson v. Design Space Int'l*, 380 N.W.2d 560, 568 (Minn. App. 1986) (stating that this court defers to the jury's ability to "assess the weight and credibility" of testimony supporting an award for a defamation per se claim), *rev'd on other grounds*, 394 N.W.2d 140 (Minn. 1986); *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 259 (Minn. 1980) (stating that "appellate courts tend to leave the amount to be awarded [on a defamation per se claim] to the jury's discretion").

Larsen does not identify anything in the record casting doubt on the jury's award. Instead, she seems to argue that the length of the jury's deliberations and the choice to award even dollar amounts for each category of harm is evidence that the jury was influenced by passion and prejudice. We disagree. Neither the length of deliberations nor the particular manner of the award factor into our assessment of the propriety of a jury award. *See Dailey*, 366 N.W.2d at 737 (stating that appellate courts focus on whether the

"jury's award is manifestly and palpably contrary to the evidence"). And the jury's award is otherwise reasonably supported by the record.

Finally, at oral argument before this court, Larsen acknowledged that none of the identified irregularities individually afford a sufficient basis for a new trial, but she claims that the aggregation of the alleged irregularities warrants a new trial. For the reasons set forth above, we discern no prejudicial error or irregularity by the district court—either individually or in the aggregate—and therefore affirm the district court's denial of the motion for new trial.

**Affirmed.**