Ronald R. TULLOS, Appellant,

v.

Donald J. PARKS; Bobby J. Osborne, Trustee; Stephen F. Smith, Trustee; and John Does 1–10, Appellees,

v.

Rem J. SLATTERY III; Andrew C. Power; M. Jocelyn Elders; W.H. Moore; Emmet W. Hall; and Loyd C. Stanley, Appellants.

No. 89–1353.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1989.

Decided Oct. 3, 1990.

Stanley Huggins, Memphis, Tenn., for appellant.

Thomas Rose, Little Rock, Ark., for appellees.

Before McMILLIAN, BOWMAN and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

This litigation grows out of a contest for control of an Arkansas bank holding company and its sole subsidiary bank. It is replete with the usual charges and counter-charges between the warring factions. The District Court[1] granted preliminary injunctive relief in favor of the tender offeror, and the target management appeals. We affirm.

I.

The National Bank of Arkansas in North Little Rock (NBA) was chartered in 1980.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

Its parent, the National Banking Corporation (NBC), a one-bank holding company, was incorporated under Delaware law in 1985, at which time NBA stock was converted to the same amount of NBC stock.

Donald J. Parks, who purchased his first shares of NBA stock when the bank was chartered in 1980, was elected to the NBC board of directors in April 1988, having acquired a substantial amount of the holding company's stock. On October 7, 1988, Parks commenced a tender offer to purchase up to 17,500 shares of NBC common stock (there were 98,668 shares outstanding) for twenty-four dollars per share, and later amended his offer to purchase, at the same price, any and all shares tendered. The offer also proposed the formation of a voting trust composed of all NBC shares Parks then owned, those purchased by him pursuant to the tender offer, and those tendered only for participation in the trust. The tender offer expired on November 25, 1988.

On December 28, 1988, without notice to Parks, he was removed "for cause" from both boards by the unanimous vote of his fellow directors.[2] The next day, NBA and NBC filed suit against Parks and the voting trustees, seeking injunctive relief and money damages. The complaint alleged violations of the Arkansas Code, including the Arkansas Investor Protection Takeover Act and the Arkansas Security Act; common law fraud and breach of corporate and fiduciary duties; and violations of sections 10(b) and 14(e) of the Securities Exchange Act of 1934 and various Securities and Exchange Commission rules. Parks and the trustees filed a counterclaim and third party complaint seeking injunctive relief for violations of section 14(e) of the 1934 Act, for common law breach of corporate duties by the directors of NBA and NBC, and for Parks's wrongful removal from the boards of NBA and NBC. They also requested a declaratory judgment voiding the staggered election of the NBC board of directors.

Following a two-day hearing on cross-motions for a preliminary injunction, the District Court orally made findings of fact and conclusions of law. Having first rejected plaintiffs' attack on the jurisdiction of the court to consider Parks's state law claims, the court considered the claims made by both parties of fraud and misrepresentation in violation of the 1934 Act. Finding no such fraud and misrepresentation by either side, and finding no basis for granting relief on any of plaintiffs' other claims, the court denied the preliminary injunction requested by plaintiffs. The court then turned to Parks's request for a preliminary injunction on his state law claims and applied the test established in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981).

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase*, 640 F.2d at 113. Based on its consideration of the *Dataphase* factors, and giving particular weight to the probability of success on the merits by Parks, the court granted some (but not all) of the preliminary injunctive relief requested by Parks. The court made a number of findings that are supportive of its conclusion as to Parks's probability of success on the merits. The more significant of these findings are as follows:

> (1) That none of the statements made by Parks in connection with his tender offer was materially false or misleading.

> (2) That although the charter and organizational documents of NBC provide for members of the board of directors to be elected for staggered terms, NBC never had implemented this provision and in fact the corporation had consistently

---

**2.** It is not clear from the briefs whether Parks attained a seat on the NBA board of directors at the same time he was elected to the NBC board, or whether that occurred at a different time. Clearly he held a seat on the NBA board, since he eventually was evicted from it.

followed the practice of electing all directors annually for one-year terms.

(3) That the directors had acted without authority in removing Parks from the NBC board.

The court further found that Parks would be irreparably harmed if he were deprived of the opportunity to acquire the NBC shares tendered pursuant to his offer and the opportunity to organize the voting trust for the purpose of making changes in the management of NBC and NBA. The court noted that plaintiffs had not made any showing concerning the public interest, and by clear implication found that the balancing-of-harms factor tipped decisively in Parks's favor.

Having made its findings and having weighed the *Dataphase* factors, the court issued a mandatory injunction requiring that all directors be elected at the 1989 meeting of NBC shareholders, that Parks be restored to his seat on the NBC board, and that the annual meeting of shareholders be held, with appropriate notice, between March 15 and April 1, 1989.[3] Plaintiffs appeal this injunction.

## II.

Plaintiffs contend here, as they did in the District Court, that the court lacked jurisdiction to adjudicate Parks's state law counterclaims and third party claims, *i.e.,* his claims relating to the staggered board of directors and his removal from the boards of NBC and NBA.

The suit against Parks asserts, *inter alia,* claims based on the federal securities laws, and thus the suit was within the federal question jurisdiction of the District Court. Parks countered with claims of his own for violations of the federal securities laws, but the claims on which the District Court granted him relief implicate only Delaware law. Parks could not have initiated suit on those claims in federal court since with respect to them there is no independent basis for federal jurisdiction, there being a lack of complete diversity of citizenship between plaintiffs and defendants.[4] The District Court, however, found that it did have jurisdiction to hear Parks's state law claims and counterclaims, presumably under the doctrine of ancillary jurisdiction. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 375 & n. 18, 98 S.Ct. 2396, 2403 & n. 18, 57 L.Ed.2d 274 (1978). As the following discussion will demonstrate, Parks's state law claims are compulsory counterclaims. They therefore are ancillary to the federal claims asserted by plaintiffs, and the District Court properly asserted jurisdiction over them.[5] *See Baker v. Gold Seal Liquors,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974) ("If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it

3. Following the entry of the District Court's order, Parks consummated the purchase of shares tendered pursuant to his tender offer and organized the voting trust. We are informed that the voting trust, which includes all of Parks's shares, contains slightly over 41 percent of the outstanding shares of NBC. At the annual meeting held pursuant to the District Court's order, over 93 percent of the outstanding shares of NBC were represented. Parks's nominees for directors were elected by a vote of 57 percent of the NBC shares represented at the meeting. Parks also won the approval of 99 percent of the shares represented at the meeting for certain resolutions aimed at eliminating the anti-takeover provisions in the NBC certificate of incorporation and requiring minimal disclosures to shareholders on an annual basis.

4. Parks does not contend that any of the parties could be dropped or realigned so as to create complete diversity.

5. There is a suggestion in the briefs that, since the District Court was unclear in asserting its jurisdictional basis for deciding the state claims, we might hold that the court asserted pendent jurisdiction over those claims. Because of our holding on ancillary jurisdiction, we need not and do not reach the question whether the District Court also had pendent jurisdiction over Parks's state law claims. We note that the usual case of pendent jurisdiction arises when the *plaintiff* seeks to join federal and state law claims in one action in federal court. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Query whether the doctrine applies

would be a matter for a state court...."). [6]

Federal Rule of Civil Procedure 13(a) defines a counterclaim as compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Personal jurisdiction over the parties is not at issue in this case. We therefore must determine only if Parks's state law claims arise out of the same transaction or occurrence as plaintiffs' federal securities laws claims.

■ In a decision applying Equity Rule 30 (the progenitor of the present Rule 13(a)), the Supreme Court described "transaction" as "a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship." Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) (emphasis added). [7] This Court has recognized the "logical relation" test as one of four that federal courts have applied. [8] *Cochrane v. Iowa Beef Processors*, 596 F.2d 254, 264 (8th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). We agree with the majority of the federal courts that the logical relation test provides the needed flexibility for applying Rule 13(a), *see* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*

§ 1410 at 61–65 (2d ed. 1990), and we apply that test in this case.

In so doing, we are mindful that the Federal Rules of Civil Procedure have as a general goal "entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims ... is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Ancillary jurisdiction in federal court, which the compulsory counterclaim rule calls into play when the claim asserted by the defendant has no independent federal jurisdictional basis, provides for the "practical needs" of the "convenience of litigants" and "considerations of judicial economy." *Owen Equipment*, 437 U.S. at 377, 98 S.Ct. at 2404.

■ The trigger for this lawsuit, and the event that gave rise to plaintiffs' federal securities laws claims, was the Parks tender offer. Parks's state law claims arise directly out of that tender offer: the staggered election of directors, although apparently required by the NBC charter, was nevertheless ignored until Parks made his bid for control of NBC, when it suddenly was implemented as a defensive tactic to protect NBC's then-management. The takeover attempt also was the stimulus for the NBA and NBC boards of directors to vote to oust Parks from his position as a director on those boards. Clearly plaintiffs would not have taken these actions were it not for the tender offer by Parks. Thus

---

when the *defendant* seeks relief on both federal and state law counterclaims.

**6.** Appellants' brief complains of Parks's failure to include a statement of the court's jurisdiction in his counterclaim and third party complaint. This Court has said, however, that "a separate statement alleging jurisdiction is not necessary to support a compulsory counterclaim." *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1197 (8th Cir.1984).

**7.** *Moore* was decided "before the unification of law and equity by the Federal Rules of Civil Procedure." *United Mine Workers of American v. Gibbs*, 383 U.S. 715, 722, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966). Federal Rule of Civil Procedure 13(a) merely broadened Equity Rule 30, so "[t]he decision in the *Moore* case and the

opinion are authority under Rule 13." 3 J. Moore, *Moore's Federal Practice* § 13.13 at 13–61 (2d ed. 1989).

**8.** The Court set forth the other three tests as follows:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

*Cochrane v. Iowa Beef Processors*, 596 F.2d 254, 264 (8th Cir.) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1410 at 42 (1971)), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

we find the necessary logical relationship between the various claims here to hold that Parks's claims arose out of the same transaction as plaintiffs' federal claims and thus Parks's claims were compulsory counterclaims. *See Crouse–Hinds Co. v. Internorth, Inc.,* 634 F.2d 690, 700 (2d Cir.1980). Moreover, plaintiffs chose the District Court as the forum for their suit against Parks. As the District Court observed, it therefore "hardly lies in [their] mouth[s] to challenge a forum of [their] selection." Findings of Fact and Conclusions of Law, p. 2. *See Owen Equipment,* 437 U.S. at 376, 98 S.Ct. at 2404 ("ancillary jurisdiction typically involves claims by a defending party haled into court against his will").

To put the matter simply, all the claims asserted by both sides in this case are part of the fight between the parties for control of NBC and NBA. These claims hardly could have a closer logical relationship. We therefore hold that they arise out of the same "transaction or occurrence" within the meaning of Rule 13(a) and that the District Court properly exercised its ancillary jurisdiction.

### III.

■ Plaintiffs argue, on a variety of grounds, that the injunction entered by the District Court is not supported by the evidence and does not meet the appropriate legal standard. Having carefully reviewed the case, however, we are satisfied that none of the District Court's findings of fact is clearly erroneous and that the preliminary injunction ordered by the court is well supported by its consideration of the *Dataphase* standards. Particularly important are the court's findings that (1) although the charter of NBC provided for the election of directors to serve staggered terms, this provision never had been implemented; (2) Parks was removed improperly as a director of NBC; (3) Parks had not made any materially false or misleading statements. Having made these findings, the District Court understandably was heavily influenced, and properly so, by that part of the *Dataphase* test that focuses on the probability that the movant (Parks) would succeed on the merits. The court also weighed the threat of irreparable injury to Parks, noted that no showing had been made that harm would come to the public interest if an injunction were granted, and by clear implication found that the threat of irreparable harm to Parks outweighed whatever injury an injunction would inflict on plaintiffs.

"The granting or denial of a preliminary injunction is properly a matter within the sound discretion of the trial court and the function of an appellate court is limited to determining whether there has been an abuse of this discretion." *Roberts v. Van Buren Public Schools,* 731 F.2d 523, 526 (8th Cir.1984). In the circumstances of this case, we cannot say that the District Court abused its discretion by granting preliminary injunctive relief in Parks's favor.

### IV.

This case involves an acrimonious struggle for the control of an Arkansas bank. We believe that the District Court handled the matter in a realistic, practical, and common-sense way consistent with the governing legal standards. Finding no reason for reversal, we affirm the order of the District Court.