**NATIONAL BANK OF ARKANSAS IN NORTH LITTLE ROCK, et al. Stanley M. HUGGINS, Appellant,**

v.

**Donald J. PARKS, Appellee.**

**No. 91–3503.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1992.

Decided July 23, 1992.

---

Stanley Huggins, Memphis, Tenn., argued, for appellant.

Thomas Rose, Little Rock, Ark., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

Stanley M. Huggins, the attorney for plaintiffs and third-party defendants in the underlying action, appeals the district court's order of sanctions against him. For the reasons set forth below, we remand this matter to the district court.

## I. FACTS

This action stems from appellee Donald J. Parks' attempt to gain shareholder control over National Banking Corporation (NBC), a bank holding company for the National Bank of Arkansas in North Little Rock, Arkansas (NBA). In 1986, Parks, who had been a shareholder of NBC since 1980, began accumulating additional common stock of NBC. In the spring of 1988, having acquired a substantial NBC shareholding and being dissatisfied with the management of NBA, Parks informed the NBC board of directors of his intention to obtain control of the bank. Hoping to amicably work with Parks, NBC gave Parks a seat on its board of directors in April of 1988. At some point in time, Parks was also elected to the NBA board of directors.

Relations between Parks and the NBC and NBA boards of directors rapidly deteriorated after October 7, 1988, when Parks issued a public tender offer to purchase outstanding shares of NBC stock. The tender offer proposed the formation of a voting trust, comprised of all NBC stock purchased pursuant to the tender offer and all stock previously owned by Parks. The tender offer, which expired on November 25, 1988, was unsuccessful in giving Parks control over NBC. Thereafter, on December 28, 1988, Parks was removed from both boards by a unanimous vote of his fellow directors.

The day after Parks' removal, NBC and NBA filed the underlying action against Parks and the trustees of the proposed voting trust, seeking injunctive and monetary relief. The complaint alleged fraud, misrepresentation, violations of state and common law fiduciary and corporate duties, and violations of the Securities Exchange Act of 1934 in connection with Parks' tender offer. Parks and the other defendants moved to dismiss all claims except plaintiffs' claim for injunctive relief, and filed a counterclaim and third-party complaint seeking injunctive relief for, *inter alia*, wrongful removal of Parks from the NBC and NBA boards of directors.

On February 22, 1989, after a two-day hearing on the parties' cross-motions for preliminary injunction, the district court issued findings of fact and conclusions of law from the bench. In a preliminary statement to the parties, the district court complimented the parties' attorneys, stating, "I have been favored with excellent attorneys in this case. The attorneys have been exceptionally competent and the case has been exceptionally well prepared." *National Bank of Arkansas v. Parks*, No. LR–C–88–900, slip op. at 1 (E.D.Ark. Mar. 2, 1989). Then, after applying the test established in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981), the district court denied plaintiffs' request for preliminary injunction but granted some of the preliminary injunctive relief requested by Parks. The district court found that Parks had been wrongfully removed from the NBC and NBA boards of directors, and ordered that Parks be restored to his seat on the NBC board. The district court also found that Parks and other shareholders had the right to attempt a fair takeover of the bank by stock acquisition, and ordered that an annual NBC shareholders meeting be held between March 15, 1989, and April 1, 1989, for the election of all eleven board directors.

Two days after the district court's ruling on the cross-motions for preliminary injunction, on February 24, 1989, Michael Grayson, one of Parks' nominees for election to the NBC board of directors, went to NBA to have his name transferred on the bank's

books and records with respect to certain shares of stock he had purchased from another shareholder in January 1989. The bank secretary refused to make the transfer until she could consult with legal counsel, but offered to accept the stock in a depository form. Because this was the second time the transfer had been denied by the bank "until consultation with counsel," [1] Mr. Grayson immediately contacted Parks' attorneys, who filed a motion for contempt against the bank the same day.

On February 27, 1989, counsel for the parties were notified by telephone that a show cause hearing on the motion for contempt would be held the next day. Also, on February 27, 1989, appellant Stanley M. Huggins, counsel for plaintiffs and third-party defendants, filed (1) a notice of appeal from the district court's February 22, 1989 order of injunctive relief, and (2) an application for stay pending appeal.

On February 28, 1989, the show cause hearing was held before the district court. Plaintiffs' counsel, Huggins, did not attend the hearing, but co-counsel was present to represent plaintiffs.[2] After receiving testimony from Mr. Grayson and the bank secretary who had denied the stock transfer, the district court held that plaintiffs were in contempt of that portion of the court's February 22, 1989 decision, which held that Parks and other shareholders had a right to attempt a fair takeover of the bank through stock acquisition. The district court ordered the bank to immediately make the transfer of Mr. Grayson's name on the bank's books and records.

At the conclusion of the hearing, Parks' attorney indicated that he intended to file a Rule 11 motion for sanctions against plaintiffs' counsel, Huggins, for misrepresentations of fact made in the application for stay filed with the Eighth Circuit Court of Appeals by Huggins. In that regard, the district court commented,

I have not read [the application for stay] closely, but I saw one misrepresen-

tation after another made in this application for a stay. I hope they will be corrected because some of them are absolutely blatant. I join you; I am surprised that an officer of the court would make such blatant misstatements in a pleading filed with the Court of Appeals. I am shocked.

Record at 12.

On June 14, 1989, this court heard oral arguments on the merits of plaintiffs' appeal. On October 3, 1990, we affirmed the district court's grant of preliminary injunctive relief in Parks' favor. *Tullos v. Parks*, 915 F.2d 1192, 1196 (8th Cir.1990).

Thereafter, on October 31, 1990, Parks filed a 30–page motion for Rule 11 sanctions in district court, alleging that the complaint signed by Huggins misrepresented facts, alleged frivolous causes of action, and was filed for the purpose of harassing Parks into abandoning his efforts to organize a voting trust. Parks also alleged that plaintiffs' application for stay pending appeal, signed by Huggins, contained numerous misrepresentations of fact. Huggins responded by filing a motion to dismiss the motion for sanctions, and later by filing a response to Parks' motion. The matter was submitted to the district court without a hearing.

Almost a year later, on October 4, 1991, the district court entered a three-page order granting in part Parks' motion for sanctions and awarding Parks the sum of $20,000 from Huggins. In its order of sanctions, the district court stated,

The heart of the complaint in this case, signed by Mr. Huggins, was composed of blatant misrepresentations, untruths and misstatements of law and of fact.... Mr. Huggins's misrepresentations to this court emanated ... from his inside first-hand knowledge of the management of National Bank of Arkansas.

.    .    .    .    .

---

1. The transfer had previously been denied by the bank in January of 1989.

2. At oral argument, Huggins explained that he did not attend the show cause hearing on the

advice of his clients, because his clients were unwilling to pay him to travel 150 miles from Memphis, Tennessee, to attend the hearing.

Mr. Huggins's conduct is particularly obnoxious in light of the fact that the subject matter of his misrepresentations was a bank, insured by the federal government. The lawsuit was a rather thinly disguised and self-serving attempt to cover up and delay discovery the fact that the bank was poorly managed.

.    .    .    . .    .

[T]he serious misrepresentations in the complaint in this case were intentional and made for improper purposes.

Mr. Huggins's misconduct did not stop with the filing of the complaint. The record reflects that he advised his clients not to comply with this Court's order, then failed to show up for the contempt hearing. His gross misrepresentations to the Court of Appeals concerning this Court's rulings are inexcusable.

*Nat'l Bank of Arkansas v. Parks*, No. LR–C–88–900, slip op. at 2–3 (E.D.Ark. Oct. 4, 1991).

Huggins now appeals.

## II. DISCUSSION

Huggins seeks relief from the district court's order of sanctions, arguing that (1) the district court failed to make sufficient factual findings as to the specific representations and conduct which the court considered to constitute violations of Rule 11, (2) the record is inadequate to support the district court's imposition of sanctions, and (3) the timing of the sanctions award was improper. Huggins also claims that the imposition of sanctions for his failure to appear at the show cause hearing was improper, because he was not given notice that his personal presence was required by the court. He further argues that it was improper for the district court to impose sanctions for what it considered to be "gross misrepresentations" contained within the application for stay, filed with the court of appeals.

With regard to the timing of the sanctions award, Huggins asserts that at the time the sanctions were imposed, no evidence, other than the evidence presented at the hearing on cross-motions for preliminary injunction, had yet been presented on the merits, and that the district court had not yet ruled on any dispositive motions. He cites the Advisory Note to Rule 11, which states, "[I]n the case of pleadings the sanctions issue ... normally will be determined at the end of the litigation...." Fed.R.Civ.P. 11 (Notes of Advisory Committee on Rules, 1983 Amendment).

■ We review all aspects of the district court's Rule 11 determination under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990). Although the district court generally "need not make detailed factual findings and legal conclusions" in making a Rule 11 determination, *E.E.O.C. v. Milavetz & Assoc.*, 863 F.2d 613, 614 (8th Cir. 1988) (citing *White Indus., Inc. v. Cessna Aircraft Co.*, 845 F.2d 1497, 1499 (8th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 146, 102 L.Ed.2d 118 (1988)), the court's findings of fact and conclusions of law, as well as the record, should be adequate to give the appellate court a clear understanding of the grounds for the district court's decision. *Id.* at 614–15.

■ Having reviewed the district court's order of Rule 11 sanctions, we conclude that the district court's factual findings are not sufficiently specific to give this court a clear understanding of the grounds for the imposition of sanctions. Furthermore, we find that the record on appeal, which includes the transcript of the February 28, 1989 show cause hearing, is insufficient to provide us with the "missing pieces" necessary for a proper review.

On this record, we are unable to reasonably determine the basis for the district court's change in posture toward Huggins, or the basis for the imposition of sanctions at this stage of the proceedings. We also are unable to reasonably determine which portions of the complaint the district court considered to be comprised of "blatant misrepresentations."

We recognize that "[t]he imposition of sanctions is a serious matter and should be approached with circumspection," *O'Connell v. Champion Int'l Corp.*, 812 F.2d

393, 395 (8th Cir.1987). *See also Lupo v. R. Rowland & Co.*, 857 F.2d 482, 485 (8th Cir.1988), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2101, 104 L.Ed.2d 662 (1989). We therefore feel it is necessary to remand the matter to the district court for findings of fact relating to each of the conclusions reached by the district court in imposing sanctions upon Huggins. On remand, we also ask that the district court set forth its reasoning for imposing sanctions at this stage of the proceedings.

## III. CONCLUSION

Accordingly, we reverse and remand this matter to the district court for further proceedings consistent with this opinion.