# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1744

_____

| | | |
|---|---|---|
| St. Jude Medical, Inc.; SJM Europe, Inc., formerly known as St. Jude Medical International, Inc.; St. Jude Medical Europe, Inc. | * * * * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Lifecare International, Inc.; | * | |
| Tony Dow | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted:  December 11, 2000

Filed:  May 2, 2001

_____

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and LAUGHREY,[1] District Judge.

_____

LAUGHREY, District Judge.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

St. Jude Medical, Inc., and its subsidiaries[2] (St. Jude), manufacture and distribute heart valves and other medical devices. During 1987 and 1988, Lifecare International, Inc. (Lifecare), through its president, Tony Dow, approached St. Jude to become a distributor of St. Jude's products. After negotiations, St. Jude and Lifecare contracted to make Lifecare a distributor for St. Jude's products in certain Middle Eastern countries. In 1992, with the help of Lifecare, St. Jude successfully bid on a contract to supply heart valves and balloon catheters to a purchasing consortium of governments in the Middle East known as the Gulf Corporation Council. The contract was referred to as the GCC Tender No. 11. In 1997, Lifecare obtained a check made out to "St. Jude Medical International, Inc.", in the amount of $1,141,955.14. The check was issued by the Saudi Ministry of Health to pay St. Jude for medical products delivered pursuant to the GCC Tender No. 11. The check belonged to St. Jude, but Lifecare cashed it and refused to turn the proceeds over to St. Jude. In response, St. Jude terminated its distributorship relationship with Lifecare. St. Jude then sued Lifecare and Tony Dow in the United States District Court for the District of Minnesota[3] for conversion, breach of contract and a declaration that Lifecare's distributor status was terminated.

After suit was filed by St. Jude in federal court in Minnesota, Lifecare filed suit against St. Jude in California state court. Lifecare raised both tort and contract claims against St. Jude and Pacesetter, Inc., St. Jude's California subsidiary. St. Jude successfully removed this case to the United States District Court for the Central District of California even though Pacesetter, Inc., was a resident of California. The federal court in California held that Pacesetter, Inc., was fraudulently joined and dismissed it from the lawsuit before transferring the case to the U.S. District Court for

---

[2]Appellees are referred to collectively as St. Jude unless the context requires individual identification.

[3]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

the District of Minnesota. Lifecare's claims against St. Jude were treated there as counterclaims to St. Jude's claims against Lifecare.

In the course of the Minnesota litigation, St. Jude learned that a second check had been issued by the Saudi Ministry of Health to St. Jude for GCC Tender No. 11 products. This $880,000.00 check was sent to Arabian Trade House. At trial, St. Jude claimed that Arabian Trade House converted the check and was acting as the agent of Lifecare when it converted the check. After a lengthy trial, the jury found that Lifecare breached its contract with St. Jude and found against Lifecare on its counterclaims. The jury also concluded that Arabian Trade House was Lifecare's agent when it converted the $880,000.00 check. A judgment was entered against Lifecare in the amount of $1,530,735.00.

On appeal, Lifecare and Tony Dow argue that the district court lacked personal jurisdiction over them and had no subject matter jurisdiction to decide Lifecare's claims against St. Jude. They also contend that the District Court's jury instructions were erroneous and summary judgment should not have been entered for St. Jude on Lifecare's claim that St. Jude tortiously interfered with a contract between Lifecare and Arabian Trade House. We affirm.

## A. PERSONAL JURISDICTION

The District Court found that Lifecare and Tony Dow were subject to personal jurisdiction in Minnesota because of their contacts with Minnesota. This finding is reviewed *de novo*. *See Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Two prerequisites must be met to establish personal jurisdiction over a nonresident defendant. The forum state's long arm statute must be satisfied and the due process clause must not be violated. *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998). "Because Minnesota long arm statutes extend jurisdiction to the maximum limit consistent with due process, we need only evaluate

whether the district court properly found the requirements of due process satisfied." *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

The requirements of due process are met if a defendant purposefully establishes minimum contacts with the forum state and the exercise of personal jurisdiction in that state is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Minimum contacts are established if a "defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' the activities." *Burger King* at 472 (1985) (internal citations omitted). In a contract case a court must consider the parties' prior negotiations, contemplated future consequences and actual course of dealings. The terms of the contract must be taken into account as well. *Burger King*, 471 U.S. 462 at 479.

Even if the minimum contacts threshold is established, personal jurisdiction may be defeated if its exercise would be unreasonable considering such factors as (a) the burden on the defendant; (b) the interest of the forum State; (c) the plaintiff's interest in obtaining relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantive social policy. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Salano County*, 480 U.S. 102, 113-14 (1987).

Lifecare and Mr. Dow contend that they did not have sufficient minimum contacts with Minnesota to satisfy due process. We disagree. Lifecare pursued a business relationship with St. Jude, a Minnesota resident. To negotiate its agreement with St. Jude, Mr. Dow phoned and wrote St. Jude personnel in Minnesota. The parties' contract contemplated an ongoing relationship requiring regular communications between Lifecare in California and St. Jude in Minnesota. By the terms of the contract, Lifecare was obligated to assist St. Jude personnel in Minnesota

to develop bids to submit to the Gulf Cooperative Consortium. At the time the distributorship agreement was reached, the products to be distributed by Lifecare were being manufactured in Minnesota and payments for those products were to be sent to St. Jude in Minnesota. Even after the contract was established, Mr. Dow and Lifecare called, wrote and visited St. Jude personnel in Minnesota to solicit more business from St. Jude. Finally, Lifecare and Mr. Dow were aware that its conversion of the Saudi Ministry of Health checks would injure St. Jude in Minnesota.

These are not random, fortuitous or attenuated contacts between Mr. Dow, Lifecare and Minnesota, but rather a purposeful connection that should have put Lifecare and Mr. Dow on notice that they could be haled into court in Minnesota. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). *See also Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1980) (personal jurisdiction established where defendants had systematic business relationship with Minnesota resident and numerous mail and telephone contacts); and *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (two trips to Minnesota, substantial purchases and extensive written communication showed that contacts were not random).

Lifecare suggests that *Wessels* is distinguishable because the contract in that case was to be performed in Minnesota. In *Wessels*, we held that a nonresident who aggressively pursues a business relationship with a Minnesota resident has sufficient minimum contacts with Minnesota to satisfy the due process clause. Like the defendant in *Wessels*, Mr. Dow and Lifecare aggressively pursued a business relationship with St. Jude, a Minnesota resident, by phone, letter and visits to Minnesota. Moreover, the parties' distribution contract initially dealt with heart valves and other medical devices which were manufactured and shipped from Minnesota, and by the terms of the contract Lifecare was required to help St. Jude personnel in Minnesota prepare bids to submit to the Gulf Cooperative Consortium.

Lifecare and Mr. Dow also contend that *Sybaritic, Inc. v. Interport International, Inc.*, 957 F.2d 522 (8th Cir. 1992), requires a finding that Lifecare and Mr. Dow were not subject to personal jurisdiction in Minnesota. That case involved a distributorship contract which was "negotiated, drafted, presented and executed in Japan." *Sybaritic, Inc. v. Interport International, Inc.*, at 525. Because the nonresident's connection with Minnesota was limited to preliminary negotiations, we found its contacts insufficient to establish personal jurisdiction in Minnesota. Unlike *Sybaritic*, the distributorship contract between Lifecare and St. Jude was sent from Minnesota to California after Lifecare initiated contact with St. Jude and communicated by phone and letter to St. Jude in Minnesota to obtain the agreement. There was also evidence of a long-term, ongoing business relationship and numerous attempts by Lifecare and Mr. Dow to develop more business opportunities with St. Jude in Minnesota. Finally, a substantial part of the dispute between St. Jude and Lifecare involved the conversion of checks which had been written to St. Jude by the Saudi Health Ministry. This conversion by Lifecare and Mr. Dow necessarily injured St. Jude in Minnesota. While no one contact between Lifecare, Mr. Dow and Minnesota may have been enough to satisfy due process, taken in the aggregate, they are sufficient to subject both Lifecare and Mr. Dow to jurisdiction in Minnesota for claims that arose out of or were related to the distributorship agreement between St. Jude and Lifecare.

## B. SUBJECT MATTER JURISDICTION

Lifecare contends that the District Court lacked subject matter jurisdiction over Lifecare's claims against St. Jude and its subsidiaries. These claims were originally filed by Lifecare against St. Jude in California state court. St. Jude, SJM Europe, Inc., St. Jude Medical Europe, Inc., and Pacesetter, Inc., were named as defendants in the California case. Pacesetter, Inc., is a subsidiary of St. Jude and has its principal place of business in California. For purposes of diversity jurisdiction, it is a citizen of California. Lifecare is also a citizen of California.

The California case was removed by St. Jude to the U.S. District Court for the Central District of California. Lifecare filed a motion to remand, claiming that there was no diversity jurisdiction because Pacesetter and Lifecare were both citizens of California. The U.S. District Court for the Central District of California ruled that Lifecare could not state a cause of action against Pacesetter and the joinder of Pacesetter was therefore fraudulent. After dismissing Pacesetter, the California federal court transferred the case to the U.S. District Court for the District of Minnesota. Lifecare's claims were treated there as counterclaims to St. Jude's claim against Lifecare.

On appeal Lifecare argues that the U.S. District Court for the Central District of California erred when it dismissed Pacesetter and refused Lifecare's motion for remand. Lifecare contends that the U.S. District Court for the District of Minnesota, therefore, did not have subject matter jurisdiction to hear Lifecare's claims against St. Jude and its subsidiaries, because there was not complete diversity between the parties. Lifecare concludes that in the absence of subject matter jurisdiction, its claims against St. Jude and its subsidiaries should be remanded to the California state court from which they were removed.

In *U.S. v. Copley*, 25 F.3d 660, 662 (1994), we held that a transfer order from a district court outside of our circuit was not subject to appellate review within our circuit. Similarly, we lack jurisdiction to review the decision of the U.S. District Court for the Central Division of California denying Lifecare's motion to remand. If a motion for remand had been filed in the U.S. District Court for the District of Minnesota, its ruling would be reviewable by us. *In re Nine Mile Limited*, 673 F.2d 242, 244 (8th Cir. 1982) (If case is transferred, the transferee court may review the propriety of transfer if a motion for retransfer is filed; otherwise jurisdiction is lacking); *Deborah Linnell v. Angelyn Alexander Sloan*, 636 F.2d 65, 67 (4th Cir. 1980) (Same).

As to the issue of subject matter jurisdiction for Lifecare's claims, there was complete diversity in the Minnesota federal court because Pacesetter, Inc., had been dismissed. However, even if Pacesetter were still a party, the District Court would have subject matter jurisdiction over Lifecare's claim. Normally, removal jurisdiction is determined at the time of removal, but if remand is denied and there is no interlocutory appeal, a judgment may be upheld if federal jurisdiction exists at the time of judgment. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76-78 (1996). While subject matter jurisdiction may or may not have existed at the time Lifecare's case was removed from California state court, a question we do not resolve, there was subject matter jurisdiction over Lifecare's claims in the District Court when judgment was entered against Lifecare. Lifecare's claims against St. Jude and its subsidiaries were compulsory counterclaims to St. Jude's claims against Lifecare. A compulsory counterclaim is one that arises "out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13 (a). Lifecare's claims arose out of the distributorship agreement with St. Jude and, in large part, were the mirror image of St. Jude's claims against Lifecare which were first filed in the Minnesota federal court. Because Lifecare's claims were compulsory counterclaims, there was supplemental jurisdiction to hear them in federal court. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, n.1 (1974); *Tullos v. Parks,* 915 F.2d 1192,1194 (8th Cir. 1990) (There is supplemental jurisdiction to hear a compulsory counterclaim even in the absence of diversity). The District Court had subject matter jurisdiction to address Lifecare's claims against St. Jude and its subsidiaries.

## C. JURY INSTRUCTIONS

One of St. Jude's claims at trial was that Arabian Trade House converted an $880,000.00 check that belonged to St. Jude. St. Jude argued to the jury that Lifecare was responsible for this conversion because Arabian Trade House was acting within the scope of its agency agreement with Lifecare when it withheld the check from St.

Jude. Lifecare countered that Arabian Trade House was the agent of St. Jude when it converted the check.

During the jury instruction conference, Lifecare asked the District Court to give a dual agency instruction. Lifecare argued that the jury should know that Arabian Trade House could be the agent of Lifecare for some purposes and the agent of St. Jude for other purposes. Lifecare acknowledged, however, that Arabian Trade House could not have acted for both Lifecare and St. Jude when it received and converted the $880,000.00 check. The District Court refused Lifecare's request for a dual agency instruction.

A decision by a district court to refuse a jury instruction is reviewed for an abuse of discretion. *See, Wood v. Minnesota Mining & Mfg. Co.,* 112 F.3d. 306, 311 (8th Cir. 1997). "[R]eview is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Klisch v. Meritcare Med. Group, Inc.,* 134 F.3d 1356, 1358 (8th Cir. 1998).

Taken as a whole, the jury instructions of the District Court were proper. The jury was instructed that St. Jude claimed Arabian Trade House converted an $880,000.00 check and that Lifecare was responsible for that conversion. Tr. 1467; Appellant's App. 513. On a Special Verdict Form, the jury was asked: "At the time Arabian Trade House received the approximately $880,000 partial payment for G.C.C. Tender 11, was Arabian Trade House acting as the authorized agent of Lifecare?" Appellant's App. 515. In Jury Instruction 17, the District Court correctly defined an agent and explained when a principal is responsible for the acts of its agent. "An agent is an individual or entity performing services for another under an express or implied agreement with the other person or entity, known as its principal. An act of an agent within the scope of the agent's authority is considered to be the act of the principal." Appellant's App. 511.

These instructions made it clear that Arabian Trade House could not act as the agent of both Lifecare and St. Jude when it received and converted the $880,000.00 check. If the jury concluded that Arabian Trade House was not the agent of Lifecare for purposes of the conversion, it would answer no to the special interrogatory, regardless of whether it thought Arabian Trade House was the agent of Lifecare or St. Jude for some other purpose.

The District Court did not abuse its discretion in refusing Lifecare's dual agency instruction.

## D. SUMMARY JUDGMENT ON LIFECARE'S CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

The District Court granted summary judgment for St. Jude on Lifecare's claim that St. Jude interfered with Lifecare's contractual relationship with Arabian Trade House. This claim appears to be based on St. Jude's effort to get Arabian Trade House to be its distributor in the Middle East. Lifecare asserts that the District Court erred when it granted summary judgment because St. Jude did not meet its initial burden under Fed. R. Civil P. 56 to show that there was no genuine issue of material fact in dispute. Lifecare also claims that the evidence it presented in opposition to St. Jude's motion for summary judgment is sufficient to establish a genuine issue of material fact.

A decision to grant summary judgment is reviewed de novo. *Do v. Wal-Mart Stores,* 162 F.3d 1010, 1012 (8th Cir. 1998). We view the facts in the light most favorable to the non-movant, *Dodd v. Runyon,* 114 F.3d 726, 729 (8th Cir. 1997), and will affirm the grant of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *McLaughlin v. Esselte Pendaflex, Corp.*, 50 F. 3d 507, 510 (8th Cir. 1995). If the party with the burden of proof at trial

is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case  necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Under Minnesota law, the elements of a claim for tortious interference with a contract are:  "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *Kallock v. Medtronic, Inc.,* 573 N.W.2d 356, 362 (Minn. 1998).  The District Court found that Lifecare failed to present evidence sufficient to support the first two elements of the claim.  The District Court ruled that Lifecare's affidavits did not mention the existence of a contract between Arabian Trade House and Lifecare. Nor did the affidavits demonstrate that St. Jude knew about the contract when it allegedly approached Arabian Trade House to distribute St. Jude's products in the Middle East.

Relying on *Handeen v. Lemaire,* 112 F. 3d 1339, 1346 (8th Cir. 1997), Lifecare complains that St. Jude did not meet its "prefatory burden" of pointing to the parts of the record which show there is no genuine issue of material fact.  Without such a showing, Lifecare contends it was not required to present any evidence in support of its claim.  However, in *Celotex Corp. v. Catrett,* the United State Supreme Court made clear that "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *Celotex* at 325.  We acknowledged in *Handeen* that this burden is "far from stringent" and "is regularly discharged with ease."  *Handeen* at 1346.

The record shows that St. Jude did identify the defect in Lifecare's claim. St. Jude pointed to Paragraph 20 of Lifecare's complaint where Lifecare alleged that St. Jude "dealt directly with [Lifecare's] sub-agents and sub-dealers . . . despite the

exclusive arrangements which [St. Jude] had committed to honor." Appellant's App. 434. St. Jude explained that this was just a restatement of Lifecare's claim that St. Jude breached its contract with Lifecare and that claim was barred by the economic loss doctrine. *See AKA Distributing Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1085-87 (8th Cir. 1998). When Lifecare responded to the motion for summary judgment clarifying that its claim was about St. Jude's attempt to interfere with the contractual relationship between Lifecare and Arabian Trade House, St. Jude pointed out that Lifecare's affidavits did not show that there was a contract between Lifecare and Arabian Trade House, its terms or any evidence that the contract was breached because St. Jude had interfered with it. This record demonstrates that St. Jude adequately met its "prefatory burden."

Lifecare also claims that it did present evidence that it had a contract with Arabian Trade House and that St. Jude knew about it. The support for this claim, however, is found in the affidavits which St. Jude submitted with its motion for summary judgment and there is no evidence that Lifecare ever pointed out that evidence to the District Court when it filed its opposition to St. Jude's motion for summary judgment. The District court was not required to sift through all of the materials to find support for Lifecare's claim. *White v. McDonnell Douglas,* 904 F.2d 456, 458 (8th Cir. 1990). Finally, two of the elements necessary to support Lifecare's tortious interference claim were (1) Arabian Trade House breached its contract with Lifecare, and (2) Lifecare was damaged. Lifecare did not present evidence to support those elements of its claim. The District Court did not err in granting summary judgment for St. Jude on Lifecare's claim for tortious interference with a contract.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.